MARGARET MAHER, Respondent, *vs.* ATLANTIC & PACIFIC RAILROAD, Appellant.

1. *Railroads —Damages —Contributory negligence —Evidence— Non-suit.*—In suit against a railroad under § 2 of the damage act (Wagn. Stat. 519–20) it appeared that the employee was run over by an express train passing at the usual hour—about seven in the evening; that the night was moonlight, but at the site of the accident, owing to a cut and curve in the road, deceased could not have been seen on the track more than two hundred and fifty yards; and there was no proof that the engineer saw him at all, or that he might with proper care have seen him ; and on the other hand it was shown that deceased, for fourteen years, had lived in a house standing on the company's right of way, and presumably knew of the time of the passage of the train, and might have seen it coming in time to get off the track. *Held*, that plaintiff made out no case for a jury, and should have been non-suited.

It is the duty of the court, when there is no evidence of negligence on the part of the company, or there is uncontradicted evidence of negligence on the part of the persons killed or injured contributing directly to the result, so to instruct the jury.

2. *Negligence—Rate of railroad speed.*—No rate of speed in a railroad train is negligence *per se*, except where the law of the State, or of a municipal corporation authorized to do so, prescribes a limit.

3. *Damages—Railroad—Care of company after discovering danger—What requisite.*—To make a railroad company liable where the party injured has also been negligent, it should appear that the proximate cause of the injury was defendant's omission, after becoming aware of plaintiff's danger, to use a proper degree of care to avoid injuring him. If, on discovering him upon the track, it was impossible, with safety to the train and those on board, to stop the train in time to prevent the casualty, the company cannot be held, unless guilty of negligence beforehand which creates the impossibility.

| 64 | 267 |
| 96 | 280 |

| 64 | 267 |
| .98 | 53 |
| 35a | 93 |
| 35a | 579 |

| 64 | 267 |
| 104 | 389 |
| 105 | 654 |

| 64 | 267 |
| 115 | 302 |
| 117 | 224 |
| 117 | 236 |

| 64 | 267 |
| 120 | 655 |

| 64 | 267 |
| 59a | 155 |
| 59a | 634 |

| 64 | 267 |
| 62a | 566 |

| 64 | 267 |
| 68a | 661 |
| 70a | 396 |

| 64 | 267 |
| 139 | 297 |

| 64 | 267 |
| 148 | 323 |
| 78a | 256 |
| 80a | 489 |

| 64 | 267 |
| 159 | 278 |
| 86a | 525 |

| 64 | 267 |
| 175 | ³485 |

## *Appeal from St. Louis Circuit Court.*

*J. N. Litton,* for Appellant, cited : Shearm. & Redf. Negl., § 478 ; Phila. & Reading R. R. vs. Hummel, 44 Penn. St. 375 ; Railroad vs. Skinner, 19 Penn. St. 298 ; Railroad Co. vs. Norton, 24 Penn. St. 469 ; Telfer vs. Northern R. R. Co., 1 Vroom [N. J.], 192 ; Withers vs. North Kent R. R. Co., 27 Law J. Exch. 417 ; Sharrod vs. London & N. W. R. R., 4 Exch. 580 ; Isabel vs. Han. & St. Joe. R. R. Co., 2 Cent. Law. J. 590 ; Shearm. & Redf. Negl. §§ 25, 36 ; Karle vs. K. C., St. Joe. & C. B. R. R. Co., 55 Mo. 484 ; Finlayson vs. C. B. & Q. R. R. Co., 1 Dill. C. C. 579 ; Railroad Co. vs. Skinner, 19 Penn. St. 298 ; Fort W. & C. R. R. vs. Evans, 53 Penn. St. 250 ; Fley-

tas vs. Pontchartrain R. R. Co., 18 La. 339 ; Jeffersonville, Madison, &c. R. R. vs. Goldsmith, 47 Ind. 43 ; Evansville R. R. vs. Hiatt, 17 Ind. 102 ; Maynard vs. Boston & M. R. R. Co., 115 Mass. 458 ; Munger vs. Tonawanda R. R. Co., 4 Comst. [N.Y.] 357 ; Artz vs. C., R. I. & P. R. R. Co., 34 Ia. 153 ; Vandegrift vs Rediker, 2 Zab. 185 ; Cin. D. & H. R. R. vs. Waterson, Ohio St. 424 ; Tower vs. Worc. R. R. Co., 2 R. I. 404 ; Louisville R. R. vs. Ballard, 2 Metc. (Ky.) 177 ; Gillis vs. Penn. R. R. Co., 59 Penn. St. 122 ; Ilott vs. Wilkes, 3 B. & Ald. 304 ; Hounsell vs. Smith, 7 C. B. [N. S.] 731 ; Binks vs. South Yorkshire R. R., 3 Best & S. 244 ; Phila. & R. R. R. Co. vs. Spearen, 47 Penn. St. 300 ; Wilds vs. Hudson R. R. Co., 24 N. Y. 433 ; Catawissa R. R. Co. vs. Armstrong, 49 Penn. St. 193 ; Conlin vs. Charleston, 15 Rich. [S. C.] 209 ; Delafield vs. Union Ferry Co., 10 Bosw. [N. Y.] 218 ; New Jersey Express Co. vs. Nichols, 33 N. J. L. [4 Vroom.] 430 ; Cunningham vs. Gyness, 22 Wis. 248.

*J. S. Laurie*, for Respondent, cited : 40 Mo. 156 ; 37 Mo. 552 ; 43 Mo. 383 ; 50 Mo. 563 ; 3 Mees. & W. 247 ; 10 Mees. & W. 545 ; 1 Ad. & Ell. [N. S.] 28.

HENRY, Judge, delivered the opinion of the court.

The plaintiff is the widow of John Maher, who was killed on the Pacific railroad by a train of cars going west on the night of the 5th of October, 1870. She sued the company in the circuit court of Franklin county, under the second section of the damage act, in February, 1871.

The petition is in the usual form, and the answer a general denial, except that it admits defendant's corporate character ; that John Maher was plaintiff's husband ; and specially avers that Maher "was a trespasser on the road, and was guilty of negligence directly causing and contributing to his death."

There was a change of venue to St. Louis county, and at a special term of the circuit court of St. Louis county, in February, 1874, there was a trial of the cause resulting in a verdict for plaintiff for $5,000.

In proper time defendant filed its motion for a new trial, which was overruled, and judgment was then rendered on the verdict. From this judgment there was an appeal to the General Term, where the judgment was affirmed, and from that judgment it has appealed to this court.

It appears from the evidence, that on the morning of the day of the disaster John Maher left home for his work of cutting brush on the section of the road on which he was employed as a section man ; that he was unwell, and that when he got to his place of work he was somewhat intoxicated, and went to the house of the section foreman, where he remained about three hours, when he went to Gray's Summit. About seven o'clock that evening he was seen by two or three witnesses on a bridge over the railroad cut. By another witness he was seen after that, going up the track towards his home. This was about a half hour before the express train passed, by which, the evidence tends to show, he was killed.

There was evidence tending to show that as late as six o'clock that afternoon deceased was intoxicated. Singleton, who testifies to having seen him on the bridge about six o'clock, says he was drunk, singing and talking. May, who met him afterwards going up the track towards his home. says he thought he was drunk. It was after seven o'clock when he was found dead on the track.

It seems from the testimony that deceased was killed at, or very near, a culvert, and fragments of his body were found scattered along the road west of the culvert for one hundred and fifty yards. East of the culvert, about two hundred and fifty yards, is a cut thirty or forty feet deep, and one hundred and fifty or one hundred and sixty yards long, and while in this cut one on a train could not see an object on the track at the culvert.

The only person who testifies to having seen deceased after May met him was his son, Frank Maher, who with his brother John was sent by their mother to see about their father ; he testifies that as soon as he got upon the straight track he saw the express train just coming out of the cut, and he stooped down and thought he saw an object on the track which he took to be

his father, and when he reached the place where he thought he saw the object, he discovered what remained of his father. He and John both fix the distance at which Frank says he discovered the object which he took for his father, at four hundred or five hundred yards. It appears to have been a bright moonlight night. John did not see the object seen by his brother. Frank testified that the train was running as fast as he ever saw it run. John does not testify as to the speed of the train. The engineer thinks they were running less than twenty miles an hour; thinks he could have seen Maher if he had been on the track, either sitting, lying down, or standing up.

The defendant asked the following instructions, which were all refused:

1. "The court instructs the jury that, under the evidence given in this cause, they will find for defendant."

2. "The court instructs the jury that there is no evidence that the train was being run at an improper rate of speed, and they will conclusively presume that the rate of speed at the time of the accident was a lawful rate of speed."

3. "The court instructs the jury that under the evidence the defendant was not required to ring the bell or sound a whistle at the place where the accident happened, or at all, unless the men in charge of the locomotive knew that Maher was on the track."

4. "If the jury believe that the engineer did not see Maher, then the court instructs the jury that they must find a verdict for the defendant, unless they believe the engineer was guilty of greater carelessness in not seeing Maher than Maher was in being on the track."

5. "The court instructs the jury that if they believe that Maher was on the track of defendant when he was killed, and that he was guilty of negligence which directly contributed to his death in being on said track at that time, and if they further believe that the men in charge of the locomotive did not see Maher at all, or know that he was there, or in danger, then the jury will find a verdict for the defendant."

6. "The court instructs the jury that in considering whether the defendant was guilty of negligence in the premises, they will confine their attention to the conduct of the engineer of the train in question."

7. "The court instructs the jury that John Maher had no right to be on the track of defendant at the time and place where the evidence shows that he was killed, and that he should not have been there."

8. "If the jury believe that John Maher was at the time of the accident intoxicated, and that if he had been sober he would not have been killed, then they will find for defendant."

9. "The jury are instructed that the law presumes that the men in charge of the train used every precaution that careful and prudent men would have used under the same circumstances, and that the presumption is conclusive, unless the jury believe the weight of evidence adduced before them shows that they did not, and unless the jury believe the evidence shows they did not, then they will find for the defendant."

10. "The court instructs the jury that if John Maher was guilty of any negligence that directly contributed to his death in any degree, they will find a verdict for defendant."

11. "The court instructs the jury that, under the evidence in this case, John Maher was guilty of negligence in being on the track at the time of the accident."

12. "The mere fact that John Maher was killed by the train in question is not sufficient to authorize the jury to find a verdict for the plaintiff in this case, but they must find a verdict for the defendant unless they believe from the evidence two other facts, namely: 1st, that the men in charge of the train in question failed to use some precaution that careful railroad men would have used under the same circumstances, and that if said precaution had been used John Maher would not have been killed ; and 2d, that John Maher himself used every precaution that a careful, prudent man would have used to avoid the danger which resulted in his death. And if they believe either that the engineer used every precaution that a careful engineer would have used under the same circumstances, or that Maher failed to use every

precaution that a careful man would to avoid the danger, and thereby contributed directly to his death, then in either case, they will find a verdict for the defendant."

13. "If the jury believe that John Maher did not use every precaution to avoid danger that a careful, prudent and sober man would have used, and by such failure directly contributed to his death, then they will find a verdict for the defendant. And if the fact be that John Maher was drunk, that fact does not relieve him from using the care and caution that a sober man would have used under the same circumstances."

14. "The court instructs the jury that if when John Maher started to go home it was a short time before the express train was due, and he knew, or ought to have known, that fact, and he then walked homeward on the track, it was his duty to keep a constant lookout for said express train, and to use every precaution to avoid danger, and he had no right to rely exclusively upon being notified by the men in charge of the train of his danger. And if the jury believe he failed to keep such a lookout, and failed to use every precaution to avoid danger that a careful, prudent man would have used, and that if he. had used such precaution the accident would not have happened, then the jury are instructed that he was guilty of contributory negligence."

To the action of the court in refusing each of these instructions, the defendant then and there excepted.

The court, at the instance of plaintiff, gave the following instructions:

1. "The court instructs the jury that even though John Maher may have been culpable and a trespasser, without right or excuse to be on the track of the railroad, yet if defendant's agents, or servants, by the use of ordinary care and prudence, might have avoided inflicting the injuries which occasioned his death, then plaintiff is entitled to recover.

"As to what constitutes negligence or prudence is for the jury to determine from the evidence, and the burden of proof to show that Maher's death was occasioned by his own fault or carelessness is on the defendant."

2. "Railroad companies, owing to the dangerous character of the business they engage in, are held to great care in the management and operation of their machinery and vehicles, and if the jury believe from the evidence that the defendant's agents or servants, in managing the locomotive or other machinery and the train of cars, failed to use reasonable care and caution by which the injuries might have been avoided, they will find for plaintiff."

3. "The jury are instructed that although the railroad company is the absolute owner of its track, and has the right to its free and unmolested use, still it is not absolved from the exercise of proper care and diligence to prevent injuries to others when they happen on the track. There is no absolute rule as to negligence to. cover all cases, but even though the deceased was at the time of his death a trespasser on defendant's track, yet if the jury believe from the evidence that defendant's agents in charge of the running train, saw, or could have seen, deceased while on the track, and might, by the use of reasonable care and prudence, have avoided running over him, then the jury are instructed to find for the plaintiff. If the verdict is for the plaintiff, the jury are instructed to find for her in the sum of five thousand dollars."

Defendant objected to each of these, and to the action of the court in giving each of said last named instructions the defendant then and there excepted. And the court on its own motion gave the following instructions :

1. "The mere fact that John Maher was killed by the train in question is not sufficient to authorize the jury to find a verdict for the plaintiff in this case, but they must find a verdict for the defendant, unless they believe from the evidence two other facts, namely : 1st, that the men in charge of the train in question failed to use such precautions as careful railroad men would have used under the same circumstances, and that if said precaution had been used John Maher would not have been killed ; and, 2d, that John Maher himself used every precaution that a careful, prudent man would have used to avoid the danger which resulted in his death ; and, if they believe either that the men in

charge of defendant's train at the time used every precaution that careful men would have used under the same circumstances, or, that Maher failed to use every precaution that a careful man would to avoid the danger, and thereby contributed directly to his death, then, in either case, they will find a verdict for defendant."

2. "If the jury believe that John Maher did not use every precaution to avoid danger that a careful, prudent man would have used, and by such failure directly contributed to his death, then they will find a verdict for the defendant. And if the fact be that John Maher was drunk, that fact does not relieve him from using the care and caution that a sober man would have used under the same circumstances."

3. "The court instructs the jury that if, when John Maher started to go home, it was a short time before the express train was due, and that he knew that fact, and that he then walked homeward on the track, it was his duty to keep a constant lookout for said express train, and to use every precaution to avoid danger, and he had no right to rely exclusively upon being notified by the men in charge of the train of his danger. And if the jury believe he failed to keep such a lookout, and failed to use every precaution to avoid danger that a careful, prudent man would have used, and that, if he had used such precaution, the accident would not have happened, then the jury are instructed that he was guilty of contributory negligence."

To which the defendant at the time objected, and to the action of the court in giving the same the defendant then and there excepted.

The first instruction asked by defendant should have been given. We have examined the record carefully to find evidence of negligence on the part of the employees of defendant, who were running the train, but have failed to discover any.

The accident occurred at night. The deceased was killed at a point but two hundred and forty-seven yards from the place on the road from which he could first be seen by the engineer and fireman under most favorable circumstances. It may be said that they might have seen him, but there is no evidence that they

did, and no evidence that their failure to see him was the result of negligence on their part. On the other hand, the evidence that deceased, by his own negligence, contributed directly to the result, was abundant. He lived, and for fourteen years had lived, in a house standing on the company's right of way. It is not going too far to presume that he knew when regular trains passed by his residence, and yet, about the time this train was due, he went upon the track and remained upon it until struck and mangled by the train. It was an easier matter for him to see the train approaching than for those running the train to see him. His sons, four hundred yards west of him, saw the train as it came out of the cut, a distance of six hundred and forty-seven yards, and he certainly could have seen it when it was within two hundred and forty-seven yards of him, if not asleep on the track, or too drunk to be conscious of the danger he was in. To hold railroad companies liable under such circumstances, is to make them insurers of the lives of all persons who go upon their tracks. It is the duty of the court, when there is no evidence of negligence on the part of the company, or there is uncontradicted evidence of negligence on the part of persons killed or injured, contributing directly to the result, so to instruct the jury. If there had been a case for the jury, the instructions given by the court fairly presented the law of the case to the jury, and defendant would have had no reason to complain except for the refusal of his second instruction, which should then have been given.

It may be urged that there was evidence that the train was running at too great a speed. The only evidence on that subject was that of Frank Maher and the engineer. Maher said it was running as fast as he ever saw it run, and the engineer says it was running less than twenty miles an hour. It may have been going as fast as Maher ever saw it run, but how fast was that? He does not say, and we are not to presume that he ever saw it run at a rate of speed greater than its usual and ordinary rate. No conceivable rate of speed is *per se* negligence, except where the law of the State or a municipal corporation, authorized to do so, prescribes a limit. (Shearm. & Redf. Negl. § 478.)

In 1 Vroom [N. J.] 192, the learned judge who delivered the opinion of the court said: "I know of no limit to the speed they are entitled to make, except that fixed by a careful regard to the safety of the trains and the passengers conveyed by them."

We are not prepared to go to that extent, but think that there must not only be a careful regard for passengers and trains, but also a proper regard for human life, in running through towns and populous neighborhoods, and at places on the road where, by the forbearance and tacit consent of the company, persons are in the habit of passing over or along the road, even where there are no public crossings. The rule is that the company shall fix its own rate of speed as regards others than passengers, and the above are exceptional cases, each standing upon legislative enactment, or its own peculiar circumstances.

As the judgment will be reversed and the cause remanded, it is proper to notice two other errors committed by the court. The first instruction given at plaintiff's instance should be modified to meet the cases of Karle vs. K. C., St. Jo. & C. B. R. R. Co. (55 Mo. 484), and Isabel vs. Han. & St. Jo. R. R. Co. (60 Mo. 482.) They announce the true doctrine, which is, that to make the defendant liable where plaintiff has also been negligent, it should appear that the proximate cause of the injury was defendant's omission, after becoming aware of plaintiff's danger, to use a proper degree of care to avoid injuring him.

The engineer, witness for defendant, was asked by defendant's attorney in what distance he could check up a train, such as he had that night, coming down the hill. Plaintiff objected and the court sustained the objection, and refused to permit witness to answer the question. Whether the engineer could have checked up the train in the distance between the mouth of the cut and the culvert, was an important inquiry, and relevant to the issue, and the occupation of witness on the train enabled him to form a correct opinion on that subject, and he should have been permitted to answer the question.

If the deceased had been discovered on the track as soon as the locomotive came out of the cut, and the evidence was that he could not sooner have been seen by the engineer or fireman, and

it was then impossible, with safety to the train and those aboard, to stop the train in time to save the life of deceased, there is no principle of law upon which the company could be held liable, unless guilty of negligence before, which created the impossibility.

With the concurrence of the other judges, the judgment is reversed and the cause remanded.