Prewitt v. Eddy.

PREWITT v. EDDY *et al.*, RECEIVERS, *Appellants.*

Division Two, March 25, 1893.

1. **Railroad**: PERIL OF PERSON ON TRACK: CONTRIBUTORY NEGLIGENCE. Where one wilfully or negligently permits his mule on which he is riding to carry him on a railroad track in front of a rapidly approaching train, which he had both seen and heard, and the engineer after seeing such person's perilous position uses ordinary care to avoid injuring him, he cannot recover.

2. ———: ———: ENGINEER: ORDINARY CARE. The ordinary care required of the engineer in such case is that care which an ordinarily prudent person would have used under similar circumstances, having due regard to his own safety and to the safety of the other persons on the train. and making due allowance for the fact that he was required to form his judgment and to act instantaneously.

3. ———: ———: ORDINANCE. The inability of the engineer to stop the train after seeing plaintiff's peril because of the fact that he was running the train at greater speed than was permitted by the city ordinance does not absolve plaintiff from the consequences of his own contributory negligence, in recklessly riding in front of the train.

*Appeal from Pettis Circuit Court.*—HON. RICHARD
FIELD, Judge.

REVERSED AND REMANDED.

*Jackson & Montgomery* for appellants.

(1) The court erred in refusing to give the first
and third instructions asked by defendants. *First.*
Because the only negligence attempted to be shown on
the part of defendants was in running the train which
struck the plaintiff at a rate of speed in excess of the
limit prescribed by the ordinance of the city of Moberly,
which did not apply to the place where the accident
occurred. *Second.* Because the evidence clearly estab-
lishes that the plaintiff went upon the track at a point
so near to the approaching train that it could not have
been stopped even if it had been running only six
miles an hour. *Kelly v. Railroad,* 75 Mo. 138.
Because the evidence shows that plaintiff was guilty of
contributory negligence in allowing the mule he was
riding to carry him onto the track in front of the train,
and in not alighting from the mule before he was car-
ried into the dangerous position. (2) The court erred
in giving the third instruction on behalf of plaintiff,
because the same is not qualified by the condition that
the train could have been stopped by the exercise of
proper care in time to have avoided the injury if it
had been running only six miles per hour, and the jury
were authorized to find for plaintiff regardless of that
fact. (3) There was error in refusing defendants'
sixth instruction after having admitted from plaintiff's
evidence that the engine was not reversed, and from
defendants' further evidence uncontradicted showing
that reversing the engine would not have aided in stop-
ping the train, and that the engineer used his best

judgment at the time. *Bell v. Railroad*, 72 Mo. 50.
(4) The court erred in refusing the defendants' seventh
instruction as prayed, and in amending it and giving
it as amended, because the amendment rendered the
instruction meaningless in first stating a rule of con-
tributory negligence, and then authorizing the jury to
disregard that rule and to establish one for themselves.
(5) The court erred in refusing defendants' eighth
instruction. It correctly set forth the care and dili-
gence required of the plaintiff and properly stated the
rule as to contributory negligence on his part. (6) It
was error to refuse the defendants' tenth instruction
and to amend it by striking out the clause relating to
plaintiff being under the influence of liquor at the time
of the accident. There was evidence from which the
jury might have found that plaintiff was under the
influence of liquor at the time of the accident, and that
the same affected his actions at that time. (7) The
language used by plaintiff's counsel in his closing
address to the jury was improper and prejudicial to the
defendants and constitutes error. There was further
error in the court omitting to call the attention of the
jury to a portion of said language when attempting to
direct the jury orally in regard to the objectionable
remarks. The vice and injury of the improper
remarks could not be removed by the oral statement
of the court directing the jury to disregard the same,
and the injury and the error still remained. *Ritter v.
Bank*, 87 Mo. 574; *Marble. v. Walters*, 19 Mo. App.
134; *Gibson v. Zeibig*, 24 Mo. App. 65, and cases cited;
*Koch v. Hebel*, 32 Mo. App. 103; *Brown v. Swineford*,
44 Wis. 282; *Attaway v. Mattox*, 14 S. W. Rep. 1017;
*Geist v. Railroad*, 51 N. W. Rep. 1112; *Thompson v.
Railroad*, 51 N. W. Rep. 995. The statement of the
court to the jury directing them to not consider such
remarks in arriving at their verdict was in the nature

of an oral instruction after the conclusion of the argument, and was therefore in violation of section 2188 of the Revised Statutes. (8) The verdict was excessive. The plaintiff was painfully but not permanently injured. There was no wantonness on the part of defendants' servants. The verdict is not a reasonable or just measure of the damage sustained by plaintiff. It can only be the result of passion and prejudice on the part of the jury kindled and fanned by the inflammatory address of plaintiff's counsel.

*Waller & Rodes* for respondent.

(1) The facts of this case render defendants liable under the settled law of this court, to-wit: *First.* The violation of municipal ordinances which regulate the speed of trains is negligence *per se. Schlereth v. Railroad*, 96 Mo. 515; *Eswin v. Railroad*, 96 Mo. 294; *Karle v. Railroad*, 55 Mo. 483. *Second.* And in cases where, if the train had been running at the speed prescribed in the ordinance, it could have been stopped after plaintiff was discovered upon the track and in peril and in time to have avoided the injury, plaintiff is entitled to recover. *Fiedler v. Railroad*, 107 Mo. 652; *Keim v. Railroad*, 90 Mo. 321. *Third.* And under such circumstances plaintiff may recover even where he is negligently on the track. *Kelly v. Railroad*, 95 Mo. 285; *Fiedler v. Railroad, supra.* (2) Appellants' first assignment of error is, that the court erred in refusing their first and third instructions, because the ordinance of the city of Moberly relied on by respondent did not apply to the place where the accident occurred. The evidence is against appellants' contention; besides no such issue was made in the pleadings, or in the trial of the cause in the court below, nor was any ruling of the court had on said

point in the trial court, or exceptions saved. Appellants' only objection to the introduction of said ordinance in the trial court was on the ground that the book containing ordinance was not properly authenticated under the statute. Appellant cannot raise this objection in the appellate court for the first time. Only such exceptions as have been expressly decided by the trial court are subject to review in the appellate court. 1 Revised Statutes, 1889, sec. 2302, p. 547; *Orr v. Rode*, 101 Mo. 399; *Bollinger v. Carrier*, 79 Mo. 318; *Light v. Railroad*, 89 Mo. 108. (3) Appellants' second, third, fourth, fifth and sixth assignments of error are with reference to the giving and refusing of instructions. Instructions should be taken as a whole, and when so taken they fairly embrace the law applicable to the case in a manner not calculated to mislead the jury, they will not be held erroneous, even though subject to verbal criticism. *Reilly v. Railroad*, 94 Mo. 611; *Henschen v. O'Bannon*, 56 Mo. 291. Instructions objectionable because too indefinite may be cured by others in which the vice does not exist. *Le May v. Railroad*, 105 Mo. 370. (4) Relative to appellants' seventh point, touching alleged improper remarks of respondent's counsel, we submit that no ruling or action of the trial court, to which exception was or could have been taken, or upon which error could have been predicated, appears in the record. Appellants' objection and exception do not purport to be based on any ruling, action or non-action of the court, but upon the action and remarks of respondent's counsel alone. Exception must be taken to the opinion, ruling or action of the court. Errors of counsel are not proper matters of review in the appellate court. 1 Revised Statutes, 1889, sec. 2167, p. 563; 1 Revised Statutes, 1889, secs. 2302, 2303, p. 590; *Smith v. Dunklin Co.*, 83 Mo. 196; *Case v. Fogg*, 46 Mo. 47; *Koegel v. Givens*, 79

Mo. 79; *Mulcairn's Adm'x v. Janesville*, 67 Wis. 35; *Bradshaw v. State*, 17 Neb. 151; *McLain v. State*, 24 N. W. Rep. (Neb.) 724; *Bullis v. Drake*, 29 N. W. Rep. (Neb.) 294; *MacLean v. Scripps*, 52 Mich. 222; *State v. Anderson*, 10 Ore. 457; *Cross v. State*, 68 Ala. 476, 484; Elliott's Appellate Procedure, secs. 769, 770, 771, 783, 795; *Randolph v. Alsey*, 8 Mo. 657; *St. Louis v. Brooks*, 18 S. W. Rep. (Mo.) 22. *First.* The point that the court erred in not withdrawing all of the alleged objectionable remarks of plaintiff's attorney is an afterthought. No such point was made or ruled on or excepted to in the trial court. In civil cases no exceptions can be taken in the supreme court except such as have been expressly decided by the trial court. 1 Revised Statutes, 1889, sec. 2302; *Orr v. Rode*, 101 Mo. 399; *Brennan v. St. Louis*, 92 Mo. 489. *Second.* In appellants' motion for new trial no error of the trial court is alleged, specified or pointed out, or in anywise connected with the alleged improper remarks of respondent's counsel. Only errors of the trial court can be reviewed in the appellate court, and since no error of the court is specified in the motion there is nothing for the appellate court to review. 1 Revised Statutes, 1889, secs. 2167, 2302, 2303. *Third.* He who claims error must make that error apparent, and when a record is silent as to facts upon which a ruling is made, or is so indefinite with reference to some action of the court, or proceeding in the trial, that the appellate court is left in doubt as to what was actually done, the appellate court will presume in favor of the decision of the trial court. *Kennedy v. McNichols*, 29 Mo. App. 13; *Nall v. Railroad*, 97 Mo. 74. *Fourth.* Illegal and improper remarks made by counsel only constitute reversible error when sanctioned by the court, or where they are persisted in by counsel after objection made, and against the admonition of the

court. *Sidekum v. Railroad*, 93 Mo. 407; *Lloyd v. Railroad*, 53 Mo. 514; 1 Thompson on Trials, sec. 960, p. 741; sec. 964, p. 749; *Cross v. State*, 68 Ala. 476–484. The verdict is not excessive. *Dougherty v. Railroad*, 97 Mo. 665; *Griffith v. Railroad*, 98 Mo. 175.

GANTT, P. J.—This action was commenced in the circuit court of Pettis county for damages, caused by a train of cars operated by defendants, in the city of Moberly, striking plaintiff and seriously injuring him. The answer was a general denial and contributory negligence.

The ordinances of the city prohibited trains running over six miles an hour.

Plaintiff also introduced in evidence a plat of a portion of the M. K. & T. Railroad and the surrounding grounds in the city of Moberly, and introduced as a witness a Mr. Ferris, who had made said plat, and explained the same to the following effect:

The M. K. & T. Railroad runs nearly east and west through that portion of Moberly; along the south side of the railroad is Reed street; crossing the railroad at about right angles is Bertley street running north and south. There is no other street or crossing between Bertley street and the eastern city limits. Along the south side of the railroad are several houses occupied by negroes, and some vacant lots, the easternmost house being occupied by a negro woman named Sue Roberts. From her lot running westerly about in a line of Reed street is a wagon road. The railroad track from Bertley street to Sue Roberts' house is upon a fill, varying from five to twelve feet in height. East of Bertley street about one hundred and ninety feet is a bridge over a culvert or ravine, about thirty-three feet in length. Near the east end of this bridge is the point

VOL. 115—19

at which the plaintiff was struck by the engine. About seventy-five feet west from Sue Roberts' gate is a white telegraph pole, mentioned in the evidence. Some distance west of this pole a path leaves the above mentioned wagon road in a northwesterly direction and enters upon the railroad track at about two hundred and seventy feet west of the white telegraph pole, and about one hundred feet east from the bridge above mentioned. About five hundred yards east of Sue Roberts' house the railroad track curves around a high piece of ground, and a train can be seen coming from the east about three hundred and eighty yards distant by persons standing at Sue Roberts' gate. The track is up grade coming west from fifty to sixty-five feet per mile; upon the north side of the track are some lots with houses on some of them fronting upon Roberts street, and having the rear toward the railroad.

The testimony shows that on the thirteenth of August, 1889, the plaintiff, who lived several miles out of town, had gone to the town of Moberly where the county fair was in progress; he admitted that during the day he had taken two drinks of whiskey and several drinks of beer, and had spent a good part of the day in and about the various saloons of the town, but he claimed he had not drunk anything after about one o'clock in the day and that he was not under the influence of liquor at the time of the accident. Sue Roberts, to whom he talked just before the accident, said that she did not notice that he was drunk, as did one or two other witnesses. Others stated that before and after the accident they could smell liquor upon his breath, and he admitted in his testimony that it was quite common for him to get drunk when he went to Moberly, and that he had been arrested and put in the calaboose several times for drunkeness, but he claimed that he did not get drunk every time he went to town.

Prewitt v. Eddy.

By other witnesses it was shown that he had the repu-
tation of a drinking man, who very frequently, if not
invariably, got drunk when he went to Moberly.

About eight o'clock or a little later of the day in
question, and after dark, he got on his brother's mule
and started to find the house of a sister who lived in
Moberly, but in another part of town from that where
the accident occurred. He shortly found himself in
front of Sue Roberts' house, and stopped to inquire
how to find the way to his sister's; he found the negro
woman, Sue Roberts, and a negro man named William
Gibson, standing at her gate, and inquired as to where
his sister lived; they told him that she lived on the
north side, across the railroad; then he asked the
woman to give him a piece of bread, and she said she
had none; he then asked for some tobacco, which she
went into the house to get for him, and before
she returned the work train was heard approaching from
the east, and was shortly seen passing around the curve
and high ground above mentioned. He was asked
where he was going, and replied, "I am going over to
my sister's," and the woman said to him, "Here comes
the train; you are going to get hurt."

There is some discrepancy between the plaintiff
and his own witnesses as to the time he started from
Sue's gate, he claiming that seeing the train he did not
wait for the tobacco, but started to ride away immedi-
ately, fearing that his mule would become frightened.
The witness Gibson says that plaintiff waited until after
the negro woman had given him the tobacco and he
had taken a chew of it, and thanked her for it; at all
events, after he had discovered the train approaching
from the east, he started to *ride away in an easterly
direction, and had gone several steps when the woman told
him he could not get out that way;* he then stopped and
turned his mule around, when he was again warned

that he had better be in a hurry as the train was coming and he might get hurt, and he started off in a lope to the west, and after reaching the path above mentioned he and the mule left the wagon road and traveling the path passed upon the railroad track a short distance in front of the engine.   Instead of crossing over the track the mule turned and traveled west between the rails until about ten or twenty feet from the bridge above mentioned, where it stopped and the engine struck it. After the accident plaintiff and the mule were found on the west side of the bridge and on the south side of the railroad track, and the train was stopped a short distance west of where the plaintiff was lying on the ground.

The plaintiff claims that he was not carried over the bridge by the engine, but that both he and the mule were knocked from the place where they were standing when struck to the place where they were afterwards found.

There is some discrepancy in the testimony as to the rate of speed at which the train was running.   The engine was a Mogul freight engine and the engineer in charge says that when he first saw the plaintiff on the track he was running fifteen or sixteen miles an hour, and that by the time he struck the plaintiff he had reduced the speed to eight miles an hour.   The plaintiff's witnesses, who were the negroes living in the houses along the track, and negro tie loaders on the train, put the speed at from thirty-five to forty-five miles per hour, arriving at their conclusions by comparison with the speed of passenger trains along the same track, which they said they understood ran about forty or forty-five miles an hour.   The plaintiff rode on the track about twenty-five or thirty feet in front of the engine.   The plaintiff's witnesses upon this point besides himself were the negro woman, Sue Roberts, and

the two men William Gibson and Len Burton; the latter was a tie loader who was riding in the engine, on the fireman's or left hand side. When along about the white telegraph pole, he heard the whistle blow, and then heard some short whistles and looked out and saw a man and a mule on the track, but says that the train was going too fast for him to tell how far distant the man and mule were.

The Roberts woman stated that when the man and mule passed upon the track the train was at the long culvert about one hundred and twenty yards east of her house, and that when the plaintiff reached the place where he was aftrwards struck the train was about opposite to her house; but again she stated that the mule did not stand longer before it was struck, than required for a man to get out of the room where she was testifying, and that when the plaintiff went on the track the train whistled at her house, and that plaintiff could not get off or pull the mule off, because the train was so close to him.

The witness William Gibson testified that the train first whistled when about opposite Sue's house, or near the white telegraph pole, and that he and Sue spoke about it not whistling until it got there; that afterwards, when it was pretty near the little bridge, it whistled again giving several short blasts; that the engine was about twenty-five feet from the mule when it got on the track; they were close together, and the mule did not travel over about twenty feet before the engine struck it.

The plaintiff himself testified that he did not try to make the mule go upon the track nor to cross the track in front of the train, but that the mule went there in spite of him and would not get off the track after it was on it; that he did not try to get off the mule because it was jumping around so. In his direct examin-

ation he said he "reckoned" the train was about one hundred and forty yards from him when he first got on the track; that the train was somewhere about Sue's house and about that time that engine gave several short "toots." In his cross-examination he stated that it did not seem more than about a second from the time he got on the track until he was struck. It was almost simultaneously; almost as soon as the mule got on the track the engine knocked them off, and that he had no time to get off the mule; that as soon as the mule got on the track he pulled him around and the engine was right on him then and they were struck, and that is the last he remembered.

Andrew Wright testified that the plaintiff went on the track twenty to twenty-five feet ahead of the train.

The engineer, Mr. Letsch, testified that he sounded a long whistle when about opposite Sue Roberts' house, that was the whistle for the station; that when he first saw the mule and the man they seemed to him to enter the track from the right hand side, being the engineer's side, and they seemed to be right over the right rail, and he thought they had come on the track from that side; that when he first saw them they were about a car length ahead of him, and probably five or six car lengths from the bridge, and they were about a car length from the mule when it started upon the track, and about the same distance when the mule stopped on the track; that, immediately upon discovering the man, he gave five or six short whistles, and also applied the steam brakes, which had the effect of reducing the speed of the train; that he did not reverse the engine because he could not do so without releasing the steam brake, and to have done so was liable to make the engine slip; that the application of the brakes was more effective than to reverse the engine, and

that he also thought that the brakes were set on the train; that after striking the mule the engine carried the man and mule over the bridge and dumped them on the side of the fill; that if the train had not been running more than six miles an hour he could not have stopped in time to have avoided striking the man; that a train and engine, such as he was running that day, and he not knowing anything about it until he saw the man in front of him, and not expecting anything of the kind, and the running six miles an hour, could not be stopped inside of one hundred and eighty to two hundred and forty feet.

There was no other witness testified as to the relative position of the train and the mule at the time the engineer discovered the plaintiff on the track.

The plaintiff also introduced several railroad men from other roads, who testified that such a train as the one in question running at the rate of six miles an hour over that sort of track could be stopped in from one hundred and twenty to two hundred feet after the signals to stop had been given.

The defendants introduced D. J. Temple, who testified that he had had about twenty-five years' experience in running trains on railroads as a conductor, and had run on the M. K. & T. between Sedalia and Hannibal for sixteen years, and for ten years of that time a passenger conductor; that from his observation and experience a train of the character and at the place in question, running six miles an hour, could not be stopped inside of eight or ten car lengths before the engineer can make up his mind what to do and to begin the necessary action; by a car length he meant about thirty feet; that there is a difference in stopping when you know beforehand that the stop is to be made, and when the necessity suddenly presents itself.

The conductor and rear brakeman testified to the same effect; that the train was running fifteen or sixteen miles an hour, and that, when the hind caboose was a little east of Sue Roberts' house, the whistle for the station was blown, and about the time that the caboose got opposite to her house the signal for brakes was sounded, followed by several short blasts, and immediately the brakes were set in the cabooses. There were two cabooses and three loaded cars besides the engine and tender in the train.

There was evidence from which the jury was authorized to find that plaintiff was permanently injured. The verdict was for plaintiff for $8,500.

I. Upon the state of facts disclosed in the foregoing statement, the plaintiff sought and obtained a recovery in the circuit court "on the theory that plaintiff was injured in consequence of defendant's negligence in running said train in the city of Moberly at the time and place averred in the petition at a high and unlaw ful rate of speed in violation of an ordinance of the city, prohibiting trains from running over six miles an hour within its limits, and that had said train been run at said time and place at the rate of speed prescribed in the ordinance, it could have been stopped after plaintiff was discovered by defendant's servants, on the track and in peril, in time to have avoided the injury to the plaintiff."

Plaintiff's instructions were asked and given on this theory, and no other issue of negligence was submitted in them to the jury, though the court heard and permitted evidence tending to show the defendant's engineer was guilty of negligence in not resorting to all the means in his power to stop the engine after seeing plaintiff on the track and in peril.

The defendants relied upon the contributory negligence of plaintiff and insist that, but for his reckless

disregard of all the laws of prudence, no injury would or could have resulted to him.

The facts of this case are somewhat different from any that have come under our observation. At the point where this injury occurred the railroad consisted of an embankment, ranging from five to twelve feet high. In this embankment, east of Bertley street, was a bridge thirty-three feet in length. The record does not disclose the width of Reed street, nor whether the street was laid out before or after the railroad was constructed; but it is clear that south of this embankment or fill there is a street or traveled road on a grade eight or ten feet lower than the railroad track and about sixty feet wide. The street terminates at the east end of the block beginning at the crossing of Bertley street.

The evidence of plaintiff's witnesses is to the effect that there is a small path leading up this railroad embankment from the street below, but that it was never traveled by horses or animals of any kind, but, to use the language of the witnesses, it was a small path up which a man walking might climb. The evidence did not tend to show that any considerable number of people were ever in the habit of crossing at this point, or if so, at what hours. Indeed, it was not seriously claimed that it was a point or place where the engineer might expect to encounter either men or animals upon the track, nor were any instructions given the jury on such a theory.

Indeed it would seem that the plaintiff assumed in the trial court that he had no right upon the tracks of the railroad at this place, and, whether the railroad was first constructed at this point after the street was graded or before, for the purposes of this discussion, its right to maintain its roadbed on this embankment and operate its trains upon it must be conceded, and

whether plaintiff was technically a trespasser or not, accordingly as the track was or was not "in a publicly traveled road or street," there cannot be any difference of opinion among reasonable men that it was gross negligence on his part if he rode a young mule up this embankment and upon this track immediately in front of a rapidly approaching train, *which he had both heard and seen approaching for a quarter of a mile,* when he had a broad thoroughfare in which he could ride with safety; nor is it reasonable that any engineer would have expected to find a man on a mule on the track at a place where no horse or animal had ever been seen, much less that he would remain there after all the warnings plaintiff confessedly received.

Nor do we understand plaintiff or his counsel either as attempting to justify his conduct as a result of his volition, but, on the contrary, his action is defended solely on the ground of *the well known perverseness of the mule,* which he claims carried him upon the track despite his efforts to prevent it. But it is in evidence that plaintiff anticipated the mule would become frightened and stated to the witnesses, Sue Roberts and William Gibson, after he was apprised of the approach of the train, that he must hurry out of this street because he was afraid the mule would be frightened. If he anticipated he could not control the mule, prudence would have dictated that he should alight and hold the mule till the train passed, as the train would most likely pass him before he could reach Bertley street and get out of the pocket or, on the other hand, when he discovered the mule had started up the embankment upon the track in front of the rapidly approaching train, the speed of the mule must have been retarded as he climbed the embankment, and it would seem that the law of self preservation would have dictated to an ordinarily careful man to throw himself from the mule

rather than risk almost certain destruction by the approaching train, but plaintiff resorted to neither of these expedients but suffered the mule to carry him on the track.

Sue Roberts testified that the mule was struck by the engine after it got on the track "in the time that it would take one to step out of the room," in which she was testifying. William Gibson, a witness for plaintiff, says plaintiff entered upon the track "*not over twenty-five feet in front of the engine.*" Plaintiff himself *says he "was struck in a second after he got on the track,*" though he also says he thinks he got on one hundred and forty yards in advance of the train. Andrew Wright, another witness for plaintiff, testified he passed upon the track "*about twenty or twenty-five feet ahead of train.*" The engineer says when he first saw plaintiff and the mule they were about "a car length or thirty feet ahead of him," so there can be little doubt that he went upon the track immediately in front of a rapidly approaching train, of whose coming he was fully advised, and was struck by the train and injured.

Leaving out of question for the present any discussion of defendant's evidence, what duty did the defendant owe the plaintiff under the case as made by himself?

The court instructed the jury as follows:

"2. If the jury believe from the evidence that on the thirteenth day of August, 1889, locomotive engine and trains of cars were by an ordinance of the city of Moberly prohibited from being run within the corporate limits of the said city of Moberly at a greater rate of speed than six miles per hour, and that on said day defendants by their agents and servants did run a certain locomotive engine and train of cars known as the tie train within the corporate limits of said city at a greater speed than six miles per hour, and

that by reason of so running said engine and cars at such greater rate of speed defendant's agents and servants in charge of and running said train were unable to stop said train after they became aware of the fact that plaintiff was upon said railroad and in peril, in time to avoid striking and injuring plaintiff, and that had said train been running at a lawful rate of speed, to-wit, six miles per hour, it could by the exercise of reasonable care and diligence on the part of defendant's said servants so running said train, have been stopped after plaintiff was so discovered upon said track and in peril, in time to have avoided striking and injuring plaintiff, then the verdict of the jury must be for the plaintiff unless the jury further believe from the evidence that plaintiff was guilty of negligence after he got upon the track that contributed to produce the injury.

"The court instructs the jury upon the part of the plaintiff that if they believe from the evidence, that at the time the engineer saw the plaintiff upon defendant's track he had reason to believe and did believe from all the facts and circumstances in evidence that plaintiff was in great danger and peril from the approaching train and that it was his duty to stop said train in order to prevent an injury to the plaintiff, *and that he, the said engineer, then and there did endeavor to stop said train by the use of all the appliances furnished him for the control of said train, and that he failed to stop his said train by reason of his running at a rate of speed greater than six miles per hour*, then the verdict must be for the plaintiff unless plaintiff was negligent after he got upon said track which contributed to cause the injury."

The defendant demurred to the evidence and insisted that plaintiff's contributory negligence barred him of any recovery.

It is well to understand the proposition involved. It is this, that, notwithstanding one may be wrongfully and negligently upon a railroad track, at a place where he has no right to be and where the engineer need not be on the look-out for him, and, after the engineer discovers him, he and the other employees of the company use all the means in their power consistent with the safety of the train and those aboard, still the company is liable if the train was running in excess of the rate prescribed by ordinance, although the train had given ample signals of its approach, and although the plaintiff had both heard and seen it approaching and rode up the embankment to get upon the track immediately in front of it.

The facts in this case do not admit of any question as to the engineer's diligence in discovering plaintiff. He discovered him at once, and the instruction of the court is predicated upon the theory and assumption that, immediately after discovering him, the engineer did use every appliance within his power to save him, *and only failed because the train had previously been run in excess of the rate of six miles an hour as prescribed by ordinance.*

The evidence in this case is uncontradicted that plaintiff not only knew the train was coming but it sounded the signals for the crossing of Bertley street and for the station. He was aware of the approach of the train for a quarter of a mile while the engineer, in the nature of things, it being dark, was only aware of his presence for a few seconds, according to plaintiff's own evidence. So that plaintiff rightly assumed that, unless he could recover solely on the ground that the train was running in excess of six miles an hour, and that no account should be taken of his own contributory negligence, which was the direct proximate cause of his injury, he could not recover at all.

In *Harlan v. Railroad*, 64 Mo. 480, Judge Napton, speaking for the whole court, said "conceding, in this case, that the failure to ring the bell was negligence on the part of the defendant's servants, yet Harlan could both see and hear the locomotive, if he had looked or listened. * * * The company are not responsible for the result of such experiments, unless the engineer, *after seeing* the hazardous position of · Harlan, could have avoided injuring him."

That case was reargued on motion for rehearing, and Judge Henry (65 Mo. 22) wrote the opinion reaffirming the doctrine as announced by Judge Napton. Judge Hough in a concurring opinion said: "It may be conceded that the defendant was guilty of negligence in failing to ring the bell. But the undisputed testimony in the cause shows that the acts of the deceased directly contributing to produce his death amounted to negligence *per se.* * * * If there had been any testimony tending to show that the defendant could, by the exercise of proper care *after discovering the danger to which* the deceased was exposed, have avoided injuring him, the *verdict should be permitted to stand.*" To the same effect are the cases of *Zimmerman v. Railroad*, 71 Mo. 477; *Yarnall v. Railroad*, 75 Mo. 583; *Maher v. Railroad*, 64 Mo. 267; *Karle v. Railroad*, 55 Mo. 476, loc. cit. 484.

In the more recent and much similar case of *Guenther v. Railroad*, 108 Mo. 18, Judge Thomas, with the concurrence of all this division, approved in terms an instruction in which the jury were "told that, if the deceased went upon a track in front of an approaching train which he could have seen if he had looked or listened, and he was struck because he did not look or listen, he could not recover, unless the jury believed the train could have been stopped by defendants by the exercise of ordinary care in time to prevent the injury

*after they became aware, or might by the exercise of ordinary care have become aware, of the peril of deceased on the track.''*

In *Fiedler v. Railroad,* 107 Mo. 645, we held that the facts of that case showed that the engineer saw the girl for six hundred feet, and that he sounded the alarm; that the girl gave no sign of having heard it. We held that she was then in peril, and as a reasonable man *he should have then checked his train.*

In *Boyd v. Railroad,* 105 Mo. 371, the plaintiff's husband stepped upon the track of a railroad running through the town of Renick immediately in front of a train running forty miles an hour. The evidence tended to show that he both heard and saw the train. BRACE, J., in writing the opinion of the court, says there were two explanations for the conduct of deceased. One was that "dominated perhaps by the first impression received in the house when he heard the whistle, that this was the regular mail (which as a hotel-keeper he was in the habit of meeting) he hastened toward the depot and onto the track without stopping for a moment to test by sense of sight or sound the correctness of his first impression, and as the result of his heedlessness lost his life." The other view, that "he may have miscalculated his own speed and that of the train and hazarded the chance of getting across the track in safety. In either view his death was the result of his own negligence." And says: "It must be conceded that if the defendant's liability in this case is to be limited, as in all similar cases heretofore it has been, *to want of care* on the part of its servants after they discovered, or by the exercise of reasonable care might have discovered, the deceased in a perilous situation, the plaintiff's evidence wholly failed to make out a case." See cases cited. The learned judge concludes the case with the observation, "*Unless the doctrine of*

*contributory negligence is to be entirely discarded,* and engineers required to be such expert psychologists as to be able to read the minds of men and know beforehand when a man in the possession of all his mental faculties is going to act in a way other than could be expected of an ordinarily prudent man, there was no evidence to take this case to a jury."

It has been consistently ruled throughout in this court that plaintiff's contributory negligence will preclude a recovery, "whether the company's negligence also contributed directly to produce the injury or not." *Maher v. Railroad,* 64 Mo. 267; *Fletcher v. Railroad,* 64 Mo. 484; *Kelley v. Railroad,* 75 Mo. 138; *Zimmerman v. Railroad,* 71 Mo. 476; *Bell v. Railroad,* 72 Mo. 50; *Purl v. Railroad,* 72 Mo. 168; *Turner v. Railroad,* 74 Mo. 602; *Powell v. Railroad,* 76 Mo. 80; *Lenix v. Railroad,* 76 Mo. 86; *Dlauhi v. Railroad,* 105 Mo. 645.

As these instructions unquestionably base defendant's liability solely on the previous concurring negligence of defendant's servants in running in excess of the rate of speed fixed by ordinance, and virtually told the jury that notwithstanding they had used all the means and appliances in their power after discovering plaintiff to save him, this could not avail defendant, *but* expressly exonerated plaintiff from all contributory negligence in going upon the track under r·ich circumstances, and confined his negligence to the time *after he had gotten upon the track,* they are ·erroneous, and not in harmony with the law of this state.

After a careful review of the doctrine of contributory negligence, we find no warrant in authority or in reason for making any distinction in the character of defendant's negligence, whether it is the violation of some statutory provision or municipal ordinance, or is such by virtue of the common law. However it originates when it is consummated, it is after all simply

negligence, or, to make it stronger, it may be negligence *per se* or *as a matter of law;* but, granting all this, still the law has been for many years and is still firmly established, that notwithstanding the defendant has been guilty of negligence, yet, if the plaintiff's own negligence contributed directly to bring about his injuries, it is in legal contemplation a proximate or efficient cause of his injury, and if both the negligence of the plaintiff and of the defendant are proximate or efficient causes of the injury, this is concurrent negligence, and in neither case can plaintiff recover. This ruling necessarily concedes that defendant's negligence *may have first occurred,* and there is no authority or reason for the distinction made by these instructions, that, notwithstanding plaintiff's own negligence, if the injury resulted in part *from the previous negligence* of defendant, plaintiff may still recover.

This attempted qualification of the rule would abolish the doctrine in most of the cases, where it has been recognized, and depends entirely upon a mere *obiter dictum,* so far as this court is concerned, of Judge HENRY in *Maher v. Railroad,* 64 Mo. 276. The slightest examination of that case will show that there were no facts in the case calling for such a statement, and it is not binding as an authority, and its apparent approval in *Dunkman v. Railroad,* 95 Mo. 232, was wholly foreign to the facts in that case. In both cases the opinions of the court announce the true rule of law in such cases, which is, "that to make the defendant liable when plaintiff has also been negligent, it should appear that the proximate cause of the injury was defendant's omission after becoming aware of plaintiff's danger to use a proper degree of care to avoid injuring him." It follows, that, even if the jury found every fact as required by plaintiff's second and third instructions, the defendant was entitled to a verdict.

VOL. 115—20

We have been led to discuss the sufficiency of plaintiff's instructions in the consideration of defendant's demurrer to the evidence. The evidence in the record indicates that the engineer and servants used all means within their power to obviate the injury after discovering the peril, but inasmuch as the case was tried upon an erroneous theory, we will reverse and remand the cause in order that the cause may be tried in accordance with the views herein expressed.

If it shall appear upon another trial that plaintiff had both seen and heard the train approaching and wilfully or negligently permitted the mule to carry him on the track immediately in front of the rapidly approaching train, and that the engineer did, after discovering him in a perilous position, use ordinary care to prevent the injury, plaintiff cannot recover.

The defendant was entitled to the seventh instruction as prayed without amendment.

The sixth instruction should have been given, if it had been qualified, so as to require the engineer after discovering the plaintiff on the track and in a perilous position, to use ordinary care to stop its train and avoid the injury. By "ordinary care" in such a case is meant, that care which an ordinarily prudent person would have used under similar circumstances, having due regard to the safety of himself and those on board his train; and making due allowance for the fact that he was required to form his judgment and act instantaneously.

The defendant was also entitled to the eighth instruction as prayed. The evidence justified it.

As the case must be reversed and remanded we are not called upon to examine at length the alleged improper remarks of counsel for plaintiff. This division on two occasions, recently, has expressed its condemnation of the practice of counsel discussing facts

not in evidence and appealing to the passions rather than the reason of juries. Verdicts so obtained will not be countenanced by this court. We think the exceptions were properly saved in this case. The judgment is reversed and the cause remanded. All concur.