## G. E. REYNER, Respondent, v. KANSAS CITY, FORT SCOTT & MEMPHIS RAILROAD COMPANY, Appellant.

### Kansas City Court of Appeals, February 4, 1901.

1. **Railroads: NEGLIGENCE: DUTY OF ENGINEER.** Though an engineer see a team on a traveled way where teams are want to pass, he is not expected to keep a lookout to see if it intends to cross in front of his engine except at a public crossing, but he is presumed to act as if they were not going to do so.

2. ——: ——: **SITUATION OF DANGER.** The general duty of a railroad to operate its trains with care becomes a duty to no one until he is in a position to have a right to complain of neglect; and so a railroad is not liable to a teamster whose team leaves a beaten way where it is safe and suddenly undertakes to cross the track at an unused place, unless the engineer saw the changed course of the team in time to avert the danger.

3. ——: ——: **RUNAWAY TEAM.** Evidence is reviewed and found insufficient to send to the jury the question of the liability of the defendant for an injury resulting to plaintiff's team which became frightened on a traveled way parallel to defendant's road and ran away across the track colliding with an engine of whose approach plaintiff had knowledge.

Appeal from the Jasper Circuit Court.—*Hon. J. D. Perkins, Judge.*

REVERSED AND REMANDED.

*Pratt, Dana & Black* for appellant.

(1) Plaintiff's damages were the result of a mere accident. Plaintiff was not expecting to cross defendant's tracks

where the accident happened. He is not in a position therefore to complain, if there was a failure of signals on defendant's part. Wasson v. McCook, 80 Mo. App. 483, 488; Railroad v. Payne, 29 Kan. 166. (2) There was no evidence that the switch engine could have been stopped in time to have avoided the accident; neither was there any evidence of any kind to show in what distance the switch engine could have been stopped. Zurfluh v. Railroad, 46 Mo. App. 636, 642; Powell v. Railroad, 59 Mo. App. 626, 633.

*Frank L. Forlow* for respondent.

(1) The appellant complains of the instructions asked by respondent, and as given and modified by the court. We contend that the instructions under the evidence were proper and in support of our contention cite the following cases: Kendig v. Railroad, 79 Mo. 207; McPheeters v. Railroad, 45 Mo. 22. (2) Respondent contends that taking into consideration, under the evidence, the place where the accident happened, the distance that the engine was north of Main street, that if the engineer had been looking he could have avoided the injury. If the engineer was not looking, then of course he could not have stopped in time to prevent the accident. But we contend that it was the duty of the engineer to look. And if he had done this and had been unable to stop his engine in time to have avoided the accident, then in that case, under the evidence, the plaintiff could not have recovered. (3) It was charged by respondent that the accident was caused by the carelessness and negligence of defendant's servants in operating the engine on its road, and this question was submitted to the jury by proper instructions and we think that in the light of the testimony the jury were justified in finding that the engineer was both careless and negligent in running the engine without looking in the direction in which he was going.

BROADDUS, J.—This suit was instituted before a justice of the peace for Jasper county where a judgment was rendered for the plaintiff against the defendant for $68, which was appealed to the circuit court of the county where it was tried anew on the seventh of July, 1899, and finding and judgment again had for plaintiff, from which the defendant has appealed to this court.

The plaintiff seeks to recover on the ground of negligence on the part of defendant's agents in operating a switch engine in its yards in Webb City.

There was only one witness in the case, and that was the plaintiff.   His evidence is to the effect that in January, 1899, he was driving a two-horse team of his own, going north between the two switch tracks of the defendant which were east and parallel to the main track; that the distance between the middle track and the main track was about eight feet and the space in which he was driving between the other two tracks was twenty or twenty-five feet; that when he got on to the tracks he was about one hundred yards south of the depot which stands on the west side of the main track; that there is a street crossing the tracks of the defendant at right angles just south of this depot; that there was a travelled roadway between the two tracks where he was travelling; that at the time he went upon the tracks of defendant he saw smoke from the engine that was north of the depot and that as it came down from the north, moving slowly, he saw it plainly, as there was nothing between him and the engine; that his team was gentle; that the injury to his team and wagon was received on the main or west track on which the engine was moving and near the end of a railway coach that was standing on the middle track; that the horses got scared and attempted to run; that the team turned west and south, they being headed north before they became alarmed.   It further appears that the street crossing was forty or fifty feet further north, and that the horses when they

started to run were close to the end of the coach that stood on the middle track.    Plaintiff was thrown from the wagon before the collision with the engine.    The engine was close to the horses at the time they turned to run west and were struck by it just as they were attempting to cross the main track.    It does not appear how far the plaintiff with his team was from the middle track when they started west and south.

It will be perceived from the statement of fact, that the middle track which the team crossed was only eight feet from the main track, where the collision happened, and that the team and engine could not have been but a short distance apart when the team turned and started to run west.    It does not appear that the engineer in charge of the engine saw the team coming in time to have averted the accident. In fact, just after the occurrence the plaintiff asked him why he did not stop a little sooner, and in response he said he did not see him—that he was looking the other way.    Respondent claims that it was negligence upon the part of the engineer in not looking ahead, and if he had been doing so the injury could have been avoided.    And his counsel cites Kendig v. Railroad, 73 Mo. 207, and McPheeters v. Railroad, 45 Mo. 22.    These two cases assert the law in relation to the duty that devolve upon railroads at public crossings.

The court in the last cited case merely holds that the right of plaintiff to recover depends upon whether the evidence showed negligence upon the part of defendant charged with the killing of plaintiff's cow on the crossing of a street of a town. As the evidence in that case showed negligence, the finding was approved by the Supreme Court.    The former case was also a case of negligence where the defendant had killed the plaintiff's steer at a public crossing.    The evidence tended to show that the animal was or could have been seen approaching the crossing, and the defendant was held liable for negligence

for not avoiding the collision although the engineer did not see the animal on the crossing in time to avoid it.   These two cases apply to animals at large, not in charge or directed by the intelligence of man, and are not in point here.

An engineer while operating an engine along on the main track might have seen plaintiff's team between the middle and east track, where teams were in the habit of being driven, but as that was not a public crossing he was not expected to be on the lookout to see if they intended to cross in front of his engine.   He must be presumed to have acted as if they were not going to do so.   He was not required to be looking out for such an occurrence.   The plaintiff had no right to cross the tracks at said place.   In fact, he was not endeavoring to do so, but his team was alarmed and running away and were not under his control.   When the plaintiff drove his team among the defendant's switches he assumed the risks usually and ordinarily attending such a situation.   He knew or must have known that there would be more or less switching on the tracks and that his team was liable to be frightened thereby.   In fact, he says that he saw smoke from the engine north of the depot when he drove in among the tracks; saw it afterwards come slowly down from the north.

As the engineer was not required to be on the lookout to see that plaintiff did not drive the team upon the track, the company could only be held liable in the event that the engineer, after the team had started to run in the direction of the track in front of the engine, saw it in time to have averted the danger.   Here, the only evidence is that he did not see the danger.   The general duty of a railroad to operate its trains with care becomes a duty to no one until he is in a position to have a right to complain of neglect.   Cooley on Torts, 660; Barker v. Railway, 98 Mo. 50; Maher v. Railroad, 64 Mo. 267; Hallihan v. Railway, 71 Mo. 113; Rine v. Railway, 88 Mo. 392.

It therefore follows that the court erred in refusing defendant's instruction number one which was a demurrer to plaintiff's right to recover on the evidence.    Cause reversed and remanded.