# SULLIVAN v. THE MISSOURI PACIFIC RAILWAY COMPANY, *Appellant.*

### In Banc, June 27, 1893.

1. **Railroad:** PUBLIC CROSSING: CONTRIBUTORY NEGLIGENCE. Where one who approaches a railway crossing in a city observes an engine approaching and relying on the presumption that the persons in charge of the engine would obey an ordinance of the city limiting its rate of speed to six miles an hour, or less, attempts to make the crossing and is struck down and killed by the engine, the question of her contributory negligence is one for the jury.

2. ———: ———: CITY ORDINANCE: PRESUMPTION. The court properly instructed the jury that while it was the duty of the deceased to look and listen before stepping on the track, yet that if she saw the train she had the right to presume, unless she knew to the contrary, that the person in charge of said train would run it at a rate of speed not exceeding six miles an hour and to act on that presumption. (BARCLAY and GANTT, JJ., *dissenting.*)

3. **Negligence:** RAILROAD CROSSING: CITY ORDINANCE: INSTRUCTIONS. An instruction was proper which told the jury that though decedent was negligent in stepping on the track, yet if after the occurrence of such negligence defendant's servants in charge of the engine discovered, or could have discovered by the use of ordinary care, her condition and its danger, and could have avoided injuring her by the use of ordinary care and failed to do so, her negligence was no defense to the action.

4. ———: ———: ———: ———. The court further instructed the jury that though the decedent was guilty of negligence in stepping on the track, and the defendant's servants in charge of the engine, after seeing her danger, could not have avoided injuring her, yet if their inability to avoid such injury after discovering her danger was caused by their running at an illegal rate of speed, and that if the engine had been running at a legal rate of speed, defendant's servants could have avoided injuring her by the use of ordinary care, then the negligence of the deceased was no defense. *Held,* erroneous.

5. ———: ———: ———. The company is liable if the accident could have been avoided by the use of ordinary care had the engine been running at a lawful rate of speed.

*Appeal from Jackson Circuit Court.*

REVERSED AND REMANDED.

*Elijah Robinson* for appellant.

(1) The plaintiff should have been require to produce the family Bible in which the date of his birth was recorded. That was the best evidence. (2) The court erred in permitting the witness Stanley to testify as to speed of the train. He expressly admitted that ho knew nothing about such matters, and was then permitted to guess at it. (3) Plaintiff's instruction number 4 was calculated to mislead the jury and direct their minds from the real issue and should not have been given. *Elliott v. Keith,* 32 Mo. App. 579; *Price v. Town of Breckenridge,* 92 Mo. 378; *Mound City P. & C. Co. v. Conlon,* 92 Mo. 221. And said instruction was not based on the evidence in the case. *Miller v. Railroad,* 90 Mo. 389; *Bank v. Overall,* 90 Mo. 410; *Huff v. Merton,* 95 Mo. 405; *Harty v. Railroad,* 95 Mo. 368; *State v. Herrell,* 97 Mo. 105; *Bender v. Dungan,* 99 Mo. 126; *State v. Riley,* 100 Mo. 493. (4) That the court erred in giving plaintiff's instruction number 5 is so clear as to be beyond controversy. *Guenther v. Railroad,* 95 Mo. 286; *Kelney v. Railroad,* 101 Mo. 67; *Dlauhi v. Railroad,* 105 Mo. 645; *Bostwick v. Railroad,* 49 American and English Railroad cases, 527. And the instructions given on the part of the defendant did not cure the defect. *State v. Clevenger,* 25 Mo. App. 653; *Nicholas v. Jones,* 32 Mo. App. 657; *Martinowski v. Hannibal,* 35 Mo. App. 70; *Stone v. Hunt,* 94 Mo. 475. The instructions being conflicting and contradictory, the jury might take either for their guide. *State v. Herrell,* 97 Mo. 105; *Spillane v. Railroad,* 111 Mo. 555. (5) The court erred in refusing defendant

instructions. (6) The court should have directed a verdict for defendant. The evidence showed beyond controversy that the plaintiff's mother was guilty of the grossest sort of contributory negligence, and there was not the slightest testimony tending to show that the employees of defendant could, by any possibility, have avoided the accident after she placed herself in a perilous position. *Zimmerman v. Railroad*, 71 Mo. 477; *Purl v. Railroad*, 72 Mo. 168; *Turner v. Railroad*, 74 Mo. 602; *Boyd v. Railroad*, 105 Mo. 371; *Shaw v. Railroad*, 104 Mo. 648.

*Teasdale, Ingraham & Cowherd* for respondent.

(1) There could be no better evidence on the question of plaintiff's age than the testimony of Patrick Donavan. He saw the mother, big with child, in September, 1868. He saw her with the baby in her arms two months later. Its name was Thomas Sullivan, and he had known him ever since. No record could be better than this. (2) John Stanley did not answer the question objected to by defendant, but if he had it would have been proper. He said the cable trains ran about ten miles an hour (see also testimony of J. S. McCrum), and this train ran about twice as fast as the cable cars. "The rate of speed of an engine or car may be shown by the opinion of witnesses who saw the car in motion." *Williams v. Railroad*, 99 Mo. 275. (3) Plaintiff's instruction number 4 was based on the evidence. Under the testimony of Bridget Ryan, the jury would properly infer Mrs. Sullivan saw the train. Unless she knew the contrary, she had a right to presume the servants of defendant would obey the law and to act on the presumption. All are presumed to know the law. *Eswin v. Railroad*, 96 Mo. 290; *Kellny v. Railroad*, 101 Mo. 67; *Hilz v. Railroad*, 101 Mo. 53; *Jen-*

*nings v. Railroad,* 20 S. W. Rep. 490. (4) Plaintiff's instruction number 5, correctly stated the law as applicable to the facts in this case. The train of defendant was running on and along a public street of a populous city, and the place where deceased was struck was the intersection of Lydia avenue and Front street, both public and traveled streets. Deceased was no tres- passer on the tracks, and the trainmen had no right to anticipate a clear track at this point. Plaintiff had the right to try his case upon the theory borne out by his evidence, viz: That the train was about three hundred feet away when deceased fell upon the track, and the danger of her position immediately became apparent. It then became the duty of the trainmen to stop the train, if they could do so by use of the means at hand, and if they observed her and failed to do so, or if through lack of ordinary care they failed to observe her or if they observed her and endeavored to stop the train, but were unable to do so because of their prior reckless- ness in running along and across public streets of a city at such a terrific rate of speed, in violation of the law, putting it beyond their power to save her life, then the defendant is liable. *Maher v. Railroad,* 64 Mo. 267; *Bergman v. Railroad,* 88 Mo. 678; *Keim v. Railway & Transit Co.,* 90 Mo. 314; *Dunkman v. Railway Co.,* 95 Mo. 232; *Kelly v. Railway & Transit Co.,* 95 Mo. 279; s. c., 75 Mo. 139; *Dahlstrom v. Railroad,* 18 S. W. Rep. 919–23; *Lynch v. Railroad,* 19 S. W. Rep. 1114; *Hanlon v. Railroad,* 104 Mo. 390; *Hilz v. Railroad,* 101 Mo. 36; *Jennings v. Railroad,* 99 Mo. 394; s. c., 20 S. W. Rep. (later) 490; *Fiedler v. Railroad,* 107 Mo. 645; *Morrisey v. Ferry Co.,* 43 Mo. 380; *Myers v. Railroad,* 59 Mo. 223. (5) Nor does this instruction con- flict with defendant's instruction, number 4. They should be read together, and when so read they prop- erly present the theories on which both sides tried the

case.   *Karle v. Railroad*, 55 Mo. 476; *Whalen v. Railroad*, 60 Mo. 323; *Owens v. Railroad*, 95 Mo. 169.   (6) If there is any error in these instructions it is that instruction number 4, asked by defendant, is inconsistent with itself, but as this is defendant's own error he cannot complain of it.   *Holmes v. Braidwood*, 82 Mo. 610; *Musser v. Adler*, 86 Mo. 445.   (7) Each side has a right to present its theory by proper instructions embodying that theory, if it is supported by evidence. *Maupin v. Company*, 78 Mo. 24; *Cahn v. Ried*, 18 Mo. App. 115.

### DIVISION ONE.

BRACE, J.—On the third of August, 1889, at the crossing of Lydia avenue and Front street in the city of Kansas, an old lady, Mrs. Ellen Sullivan, was run over and killed by a train of defendant's freight cars being propelled by a switch engine along said Front street, and over said crossing.

In this action afterwards instituted by the plaintiff, her only minor child, he obtained judgment in the circuit court of Jackson county for $5,000, under the statute, for her death.   The defendant appeals.

By the ordinance of the city of Kansas the running of a locomotive and cars within the city limits at a greater rate of speed than six miles an hour, is prohibited.

The evidence of the plaintiff tended to prove that when Mrs. Sullivan was struck by defendant's cars, the train was running at the rate of about twenty miles an hour, and that no bell was ringing nor whistle blowing; that it consisted of a switch engine and two box cars in front of it; that Mrs. Sullivan and six or seven other ladies had been visiting a lady residing on the north side of the railroad track and Front street, and near the point where she was killed; that leaving

her house they approached the crossing, and all started to cross over, four or five of the ladies in advance followed by a Mrs. McKeever and Mrs. Sullivan, a few steps in their rear, Mrs. McKeever leading and Mrs. Sullivan following. The ladies in advance crossed the track and just as Mrs. McKeever stepped upon it some one exclaimed "the switch engine is coming;" Mrs. McKeever, answered, "we will make it," and stepped across the track; as she was stepping off the track Mrs. Sullivan looked up and down the track, stepped on it, and as she did so, either tripped against the rail or caught her foot in her dress and fell. She was a large woman; she got partly up, fell again, struggled toward or onto the south rail and was struck before she could get over it, and died within a minute; that the train ran on, after passing over her, about a block before it stopped; that at the time Mrs. Sullivan stepped on the track the train was distant from the crossing from two to four hundred feet; that the track was straight and in plain view of the operatives; that such a train running at the rate of six miles an hour could be stopped in about ten feet; at eight miles an hour in fifteen or sixteen feet; at ten miles an hour in eighteen or twenty feet; at fifteen miles an hour in forty or fifty feet and at twenty miles an hour in one hundred and fifty feet, at twenty-five miles an hour in about two hundred and twenty-five or two hundred and fifty feet.

The evidence for the defendant tended to prove that the train consisted of a switch engine and four freight cars, two loaded and two empty, the engine in the middle of the train; that it was running from eight to ten miles an hour; that the bell was ringing and the whistle blowing; that the operatives discovered the ladies approaching the track when the train was about a block from the crossing; that they did not

check the speed of the train; that four of the ladies crossed the track; that the deceased came up near the track, stopped, looked in the direction of the coming train, and when it had approached within the distance of six or eight feet, as one witness says, or within the distance of a car length of the crossing, as other witnesses say, she stepped on the track, fell and was killed; and that nothing could have been done that was not done after she stepped upon the track that could have prevented the train from striking her.

The evidence of the defendant further tended to prove that such a train running at the rate of six miles an hour could not be stopped inside of thirty-five or forty feet. At the rate of eight miles an hour, it would take fifty-five or sixty feet to stop; at ten miles an hour between seventy and eighty feet; at twelve miles an hour about one hundred feet; at fifteen miles an hour about one hundred and fifteen or one hundred and twenty feet and at twenty miles an hour about one hundred and fifty feet.

The errors complained of as ground for reversal are, the refusal of the court to direct a verdict for the defendant on the evidence, and the giving of the following instructions for the plaintiff:

"4. You are instructed that while it was the duty of Ellen Sullivan to look and listen before stepping upon the track, yet if you find from the evidence that she did see the train, then she had the right to presume, unless she knew to the contrary, that the person in charge of said train would run the train at a rate of speed not exceeding six miles per hour and to act upon said presumption.

"5. Although you may believe from the evidence that Ellen Sullivan was guilty of negligence in stepping upon the track, yet if you further find from the evidence that after said Ellen Sullivan was guilty of neg-

ligence, the agents, servants and employees of defendant in charge of the locomotive and cars discovered or could have discovered by the use of ordinary care, her condition, and the danger of the same, if it was dangerous, and could have avoided injuring her by the use of ordinary care, and failed to do so, then such negligence of said Ellen Sullivan is no defense to this action, (and in this regard the court further instructs you that although you believe from the evidence that Ellen Sullivan was guilty of negligence in stepping upon the track, and although you may believe from the evidence that the servants, agents and employees of defendant in charge of said train, after seeing her on the track, and discovering the danger of her position, if it was dangerous, could not have avoided injuring her by the use of ordinary care, yet if you further find and believe from the evidence that their inability to avoid such injury after discovering her condition, was caused by their running at an illegal rate of speed, and if they had then and there been running at a legal rate of speed they could have avoided injuring her, by the use of ordinary care, then such negligence of said Ellen Sullivan is no defense to this action)."

I. There was no error in the refusal of the court to direct a verdict for the defendant on the evidence. To have done so would have been to have totally ignored the evidence for the plaintiff.

It is clear from the evidence that the defendant's servants were running this train along and across the public streets of the city at a rate of speed in excess of that prescribed by the city ordinances. And there was evidence upon which the jury might well have found that the deceased, in attempting to cross the defendant's track (laid and operated in one of those streets) was in the exercise of ordinary care and prudence. To have declared as a matter of law that she was not, in

this case, would have been to declare that a citizen lawfully pursuing his way across a public highway, who comes to a railroad track laid along it, and before he enters upon it, looks (as a careful and prudent person should do) up and down the track for danger, and sees an approaching train distant two to four hundred feet (as plaintiff's evidence tended to show) whose rate of speed he cannot determine, for the reason that it is coming directly towards him; but who relying upon the assurance that the law gives him; that the train is being run at no greater rate of speed than six miles an hour, then undertakes to make the next three or four steps in his pathway that will safely land him across the track, is, by so doing guilty of negligence and forfeits all right to protection against the negligence of the railroad company, is against reason and the law. *Eswin v. Railroad*, 96 Mo. 290; *Kellny v. Railroad*, 101 Mo. 67.

A reasonably prudent person might well suppose that he could safely cross the track under such circumstances. It was for the jury to determine under all the circumstances as detailed in the evidence whether the deceased acted as a reasonably prudent person would have acted in her situation, in attempting to do so. The shouting upon which so much stress is laid in the argument of counsel upon this point, except the exclamation that "the switch engine is coming" which she evidently heard and acted upon, was after the unfortunate woman had stepped upon the track and fallen or was about to fall, and when monitions could no longer do her any good in the struggle she was making to extricate herself from the terrible situation in which she was.

Even if the jury had found as a matter of fact that the deceased under the circumstances was guilty of negligence in entering upon the track, it did not follow that

she could not recover.   We do not know, and it is not for us to determine, neither was it for the judge who tried the case below to determine, how far this train was from the crossing, or at what rate of speed it was running at the time deceased stepped upon the track.

There is no question in this case about negligence of the defendant's servants in failing *to discover* the perilous situation of the deceased in time to prevent the accident.   They saw her from the beginning to the end of the tragedy; and there is evidence upon which the jury might have found that if the defendant's servants had been at their posts and on the watch for persons likely to be on the track at the crossing of two public streets in a populous city, as this was, and as was their duty, they could by the prompt use of the proper means, have stopped or checked the train so as to have avoided the accident; for it is to be remembered that the evidence of the distance of the train from her at the time the deceased stepped on the track ranged all the way from six to four or five hundred feet, and the speed of the train all the way from six to twenty miles an hour; and whichever standard furnished by the evidence be adopted to measure the distance within which the train could have been stopped, it is manifest that there was evidence upon which the jury could have found that the train was at such a distance and going at such a rate of speed when the deceased stepped on the track, that it might have been stopped or checked in time to have prevented the accident.

II.   The court committed no error in giving the fourth instruction.   The criticism upon it is not well founded, and the authorities cited in support thereof are not in point.   The jury in this instruction are not directed to presume a fact, concerning which there is evidence; but are simply told on the one hand what

under the law was the duty of the deceased, and on the other, what was her right. Every one is presumed to know the law, and his rights and duties under the law, and to act in accordance with them, and it is the peculiar province of the court to advise the jury what those rights and duties are in a given case.

III. Instruction number 5 given by the court for the plaintiff is unobjectionable down to the qualifying clause contained within brackets. With this clause omitted, the instruction is in harmony with instruction number 4 given for defendant, and with every ruling of this court upon the subject since the case of *Harlan v. Railroad*, 65 Mo. 22, in which, it may be said, the doctrine recognized and applied in earlier cases was first distinctly formulated, by which, a plaintiff was permitted to recover, notwithstanding the fact that his own negligence contributed to produce the injury of which he complains. This doctrine is so well understood in this state, and the cases are so numerous in which it has been reiterated, as to be unnecessary of citation or review. In the ruling of no one of them will be found support for the qualifying clause introduced into this instruction. After going through them all the only color of support for it, that we can find among our authorities, is a redundant remark of the learned judge made *arguendo* in *Maher v. Railroad*, 64 Mo. 276, and paraphrased in *Dunkman v. Railroad*, 95 Mo. 232. In both of these cases the remark was foreign to the ruling made, purely *obiter*, and in which at the same time the well recognized rule on the subject was stated.

The first time the doctrine contained in this qualifying clause came before this court in such a tangible shape as to warrant a ruling upon it, was in the case of *Guenther v. Railroad*, 95 Mo. 286, in which it was disapproved. The next was in *Kellny v. Railroad*, 101 Mo. 67, and the last in *Dlauhi v. Railroad*, 105 Mo.

645, in both of which it was also disapproved. The reasoning in these cases shows that to adopt it would be, in this class of cases, to practically abrogate the doctrine of contributory negligence. For while the principle which lay at the root of the accepted doctrine was that although the plaintiff was guilty of negligence contributing with that of the defendant to the production of the injury, yet if the defendant could by the exercise of due care, after the situation became or might have become apparent to him, have prevented the injury, he was held responsible. The principle of this new doctrine is that he is to be responsible whether he could have prevented the injury or not, after the situation became or might have become apparent to him.

In applying this new doctrine to the facts in this case the jury may well have concluded from this instruction that although they might find that the deceased was guilty of gross negligence in entering upon the track in front of the approaching train, yet if they further found that the train was being run at a greater rate of speed than six miles an hour, they ought to find for the plaintiff, though the death of his mother was the result of these two concurring acts of negligence, provided they further found the fact to be that she went upon the track at any distance from the train within which it could have been stopped before it struck her if the train had been going at no greater rate of speed than six miles an hour. Thus the power to prevent the injury is practically eliminated by the instruction from the law of contributory negligence as a basis of recovery; and the right to recover is predicated upon concurrent negligence of both parties, and the finding of a fact tending only to prove that the deceased was not negligent.

It is to be regretted that in so close a case as this, otherwise so well tried, an error such as this should

VOL. 117—15

have been committed. But the error being of such a character as that it may have affected the result, the judgment must be reversed and the cause remanded for new trial. All concur, except BARCLAY, J., who dissents.

### ON REHEARING.

BRACE, J.—On rehearing by the court *in banc* all the judges agree in reversing and remanding the cause for new trial; SHERWOOD and MACFARLANE, JJ., concurring in the foregoing opinion; GANTT, J., also, except in paragraph 2; BLACK, C. J., and BURGESS and BARCLAY, JJ., expressing their views in separate opinions.

BLACK, C. J.—1. It is the duty of persons operating a train of cars along or across a highway to use ordinary care to avoid injuring persons, traveling thereon, and this duty requires such operatives to be vigilant and watchful whether there is or is not an ordinance or law regulating the rate of speed. A negligent failure to perform this duty, causing injury to another is actionable.

2. The running of cars at a rate of speed prohibited by a municipal ordinance is negligence *per se.* The defendant is liable for injuries caused by running its cars at a prohibited rate of speed though the operatives did all in their power to avoid the injury after the peril of the injured party was discovered by them; for inability to stop the train in time to avoid the injury is no excuse, if the inability to stop in time to avert the calamity was due to the prohibited rate of speed at which the train was running. In other words the defendant is liable if the accident could have been avoided by the use of ordinary care had the cars been running at a rate of speed not prohibited by ordinance.

3. The foregoing propositions relate to the negligence of the defendant. The following rules relate to contributory negligence: There can be no recovery where the injured party and the defendant are both at fault, and the negligence of each contributed proximately and directly to the injury. But where the negligence of the defendant is the proximate cause of the injury, while the negligence of the injured party is only a remote cause or a mere condition, the plaintiff may recover; such negligence of the injured person is no defense. Again, "The plaintiff should recover, notwithstanding his own negligence exposed him to the risk of injury, if the injury of which he complains was proximately caused by the omission of the defendant, after having such notice of the plaintiff's danger as would put a prudent man upon his guard, to use ordinary care for the purpose of avoiding such injury." 1 Shearman & Redfield on Negligence [4 Ed.], section 99.

4. The court at the request of the defendant told the jury that if the deceased was negligent at the time and place she was killed, and that such' negligence directly contributed to her death, then the plaintiff could not recover, although the defendant was also negligent. The same' principle is recognized in the first insruction given at the request of the plaintiff. It follows from the principles of law before stated that these instructions were proper.

The difficulty in the case arises out of the fifth instruction given at the request of the plaintiff, which contains these propositions: *First*, though the deceased was guilty of negligence in stepping upon the track, yet if thereafter the servants in charge of the train discovered, or by the exercise of ordinary care could have discovered her peril, and by the use of ordinary care could have avoided the injury, then such negligence on her part

constitutes no defense; *second*, if the inability of the persons in charge of the train to stop it in time to avoid the injury, after they saw the deceased in a dangerous position, was due to the fact that they were running the train at a prohibited rate of speed, then the negligence of the deceased in stepping upon the track in front of the train is no defense.

It was held in *Scoville v. Railroad*, 81 Mo. 434, citing prior cases in this court, that to make the defendant liable, where both parties were negligent, the negligence of the defendant must occur after the defendant knew, or, by the exercise of ordinary care might have known of the danger of the deceased. And it was said in *Hilz v. Railroad*, 101 Mo. 36, "If the failure to so discover him was the result of the omission of that measure of duty, which the law requires, in view of the locality, circumstances and dangers to be anticipated, and due observance thereof would have enabled the persons in control of dangerous agencies of this sort to have avoided the injury by the use of reasonable care, then and in such case, such omission and want of reasonable care is, under the law, held the proximate cause of the injury, and liability for the resulting damage may then exist, notwithstanding the negligence of the person injured." It was certainly the duty of the defendant here to obey the ordinance regulating the rate of speed. The principle of these cases applied to this one is this: If after the defendant knew, or by obeying the command of the ordinance regulating the rate of speed might have known, of the danger of the deceased in time to have avoided the injury, then the defendant is liable notwithstanding the negligence of the deceased. It seems to me the instruction, in both of its branches, conforms to the rule stated in the above cases as well as that stated in Shearman & Redfield on Negligence. The second

branch of the instruction is but a specific application of the "might have seen" doctrine set out in the first.

While the instruction states facts amounting to negligence on the part of the defendant, which was an immediate and proximate cause of the injury, and while it is unobjectionable so far as it defines negligence of the defendant, and while it would be a correct statement of the law in some cases, still I think it is inapplicable to the case in hand. It was designed to and does take the question of contributory negligence away from the jury. It is a conceded fact that the deceased actually saw the approaching cars just before she stepped upon the track. She voluntarily and knowingly placed herself in this position. It was a position of obvious and manifest danger, unless the cars were so far from her that she had time to cross the track in safety, had the train been running at a lawful rate of speed. In view of the fact that the deceased knowingly placed herself on the track in front of an approaching train, I think the question of contributory negligence should have been left to the jury to be determined in view of all the circumstances. To sustain the instruction we must pronounce the conclusion from the facts therein recited that the injury was wilfully inflicted by the servants of the defendent, or that the negligence of the deceased was a mere remote contributing cause of the injury. If all the facts stated in the instruction be found for the plaintiff, it would not necessarily follow that the injury was wilfully inflicted; nor do I see how it can be said, as a conclusion of law from the facts recited in the instruction, that her negligence was remote in the chain of causation, when we attach to those facts the further conceded fact that she knowingly stepped upon the track in front of a train which she knew was approaching her. Surely she

ought to be required to take that care of herself which others are required to take of her.

The circumstances of this case are such that in my opinion the questions whether deceased was negligent, and whether her negligence was an immediate and proximate contributing cause should be submitted to the jury on all the circumstances of the case. The questions are: Did she act as a prudent person would have acted under the same circumstances? and did her want of such care contribute directly and proximately to the injury? I regard the case of *Railroad v. Ives*, 144 U. S. 408, as an authority for, not against, the proposition that the question of contributory negligence here is one for the jury to determine on all, not a part, of the circumstances in evidence.

To avoid any misunderstanding, I repeat, there is no objection to this fifth instruction given at the request of the plaintiff, so far as it defines negligence on the part of the defendant. The error in it is that it cuts out the defense of contributory negligence, a defense, which, in my opinion, under the facts of this case, should have been submitted to the jury for them to determine upon all the evidence. The court, I agree, did not err in giving the plaintiff's fourth instruction.

### SEPARATE OPINION.

Barclay, J.—Finding myself unable to agree to some of the propositions asserted in the opinion of my learned brother Brace, it seems appropriate to indicate distinctly the points of difference.

1. What force should be given to reasonable municipal regulations of the speed of railway trains, and to similar local enactments for the protection of life and property, is the question of first consideration. Its importance is obvious.

The facts of the case have been already stated and need not be repeated.

The judgment against the railway company is to be set aside because the circuit judge gave the fifth instruction quoted. It deals with the liability of defendant on the assumption that plaintiff was negligent in stepping on the track before she fell. The majority of my brethren concede that the first half of the instruction is entirely correct. That concession is satisfactory as far as it goes.

The doctrine it recognizes was announced in Missouri more than thirty years ago, following the leading English case of *Davies v. Mann* (1842), 10 M. & W. 546. It has since been often applied; though there are, nevertheless, instances in the reports (some of which are referred to, with approval, in the leading opinion here) in which it has been wholly ignored. That doctrine bears so directly on the merits of this case that its full meaning should be appreciated. It has been formulated by the highest court in England, thus:

"The plaintiff in an action for negligence cannot succeed, if it is found by the jury that he has himself been guilty of any negligence or want of ordinary care which contributed to cause the accident. But there is another proposition equally well established, and it is a qualification upon the first, namely, that though the plaintiff may have been guilty of negligence, and although that negligence may, in fact, have contributed to the accident, yet if the defendant could in the result, by the exercise of ordinary care and diligence, have avoided the mischief which happened, the plaintiff's negligence will not excuse him" (the defendant). *Radley v. London, etc., Co.* (1876), L. R. 1 App. cases, 759.

The supreme court of the United States in recent cases has approved and followed the same rule. *Coasting Co. v. Tolson* (1891), 139 U. S. 551; *Railroad v. Ives* (1892), 144 U. S. 408. It is universally recognized wherever the principles of the modern common law prevail, though it is not necessary here to mention more than a few more precedents applying it, outside of this state. *Scott v. Dublin, etc., Co.* (1861), 11 Irish C. L. 377; *Silliman v. Lewis* (1872), 49 N. Y. 379; *Reis v. Wendell* (1884), 5 Hawaii, 140; *Beckett, v. Grand Trunk, etc., Co.* (1885), 8 Ontario, 601; *Pierce v. Cunard Co.* (1891), 153 Mass. 87; *Valin v. Milwaukee, etc., Co.* (1892), 82 Wis. 1.

It is a serious error to suppose that the proper application of that rule would "practically abrogate the doctrine of contributory negligence."

As was pointed out with great clearness by Judge Scott in *Adams v. Wiggins Ferry Co.* (1858), 27 Mo. 95, the negligence of plaintiff, which will defeat his recovery must be such as "actively" (or as some other judges say, "directly") contributes to the injury "at the time of its commission;" and "where there is a mere passive fault or negligence on the part of the plaintiff, the defendant is bound to the observance of ordinary care and prudence in order to avoid doing him a wrong."

This distinction has been well expressed in a distant quarter of the globe by Sir GEORGE INNES in *Brown v. Com'r for Railways* (1887), 9 New South Wales, L. R. 92, thus: "The two rules perhaps may appear to conflict, but are really not in any way inconsistent when it is borne in mind that the negligence on the part of the plaintiff, which is to preclude him from recovering, must be negligence immediately and proximately conducing to the injury."

So that the negligence of the injured party is a defense, in a case like this, only when it enters into the result as a direct or efficient cause thereof; but where that negligence distinctly precedes the final act producing the injury, and that act might have been avoided by defendant's exercise of reasonable care, the prior negligence is not to be regarded, juridically, as the proximate or direct cause of the damage.  *Fitch v. Pac. R'y Co.* (1870), 45 Mo. 322; *Brown v. Hannibal, etc., Co.* (1872), 50 Mo. 461; *Werner v. Citizens, etc., Co.* (1884), 81 Mo. 368.

This rule does not nullify the other proposition that where negligence of the injured party directly contributes to the result, there can be no recovery, under the principles of the common law.

Sometimes it is a question of fact whether the negligence, just mentioned. directly contributed to the injury, or whether it was so remote as to be a mere condition, and not a proximate cause.  *Meyer v. Pac. R'y Co.* (1867), 40 Mo. 151; *Morrissey v. Wiggins Ferry Co.* (1869), 43 Mo. 380; *Karle v. Kansas City, etc., Co.* (1874), 55 Mo. 476.

On the other hand, the admitted facts may at times tend so plainly to an inference of negligence, directly contributing to the result, as to exclude any other reasonable conclusion; and in such case the court may so declare by virtue of its right to determine the evidential force of facts submitted for its action.

That these priciples are frequently difficult of practical application, goes without saying.  But that furnishes no sufficient reason to discard the valuable rule of *Davies v. Mann*, 10 M. & W. 546 (of which *Adams v. Wiggins Ferry Co.*, 27 Mo. 95, is the counterpart in Missouri), in order to save the doctrine of contributory negligence from its supposed peril.  Each has its proper, useful and just place in our jurisprudence; and

the efforts of those who strive to apply the law with a due regard to its vital principles, will, no doubt, in time secure a more general understanding of the proper part that each of those rules should play in the administration of justice.

Some of my associates (acknowledging in a measure the force of the doctrine of *Davies v. Mann*) admit, in the leading opinion, that the circumstances of the present case are such that, notwithstanding Mrs. Sullivan may have been negligent in going on the track, yet defendant would be liable if it failed to exercise ordinary care to discover and to avert her peril when there, as stated in the first part of instruction 5. This rule is conceded to be established law. Why? Because the principles of general jurisprudence, deduced by the judges from the precepts of the common law, are held to impose on defendant a duty to use reasonable care to avoid the consequences of Mrs. Sullivan's prior negligence.

Now just at this point my view of the case, with due deference to the judgment of my associates, differs from that given in the opinion of my learned brother BRACE.

If, in such circumstances, defendant is liable for negligence resulting from the breach of a duty imposed upon it by the general principles of law (as construed by the courts), why should not defendant be held liable, on the same facts, for breach of a duty imposed upon it by positive law, namely, the ordinance regulating the speed of trains in Kansas City? It has heretofore been often held, in this state, that the failure to observe such municipal regulations is of itself negligence. *Liddy v. St. Louis R'y Co.* (1867), 40 Mo. 507; *Dahlstrom v. St. Louis, etc., Co.* (1892), 108 Mo. 525. Yet in the leading opinion now delivered the position is taken

that, for negligence of that kind, defendant is not liable, if prior negligence of Mrs. Sullivan existed, but that her negligence was sufficiently remote to warrant a recovery if defendant had been guilty of negligence of a different sort, namely, failing to use reasonable care to discover her peril and to avert it.

This distinction between different sorts of negligent acts of the defendant seems to be entirely artificial, and untenable on principle. Worse than that, its application has the effect to excuse the defendant from performing one duty (said to rest upon it by reason of common law principles) because of its failure to observe another duty enjoined on it by the ordinance.

These ordinances contemplate that persons are likely to be upon the public streets where defendant has its tracks, and their design is to protect the lives, limbs and property of citizens lawfully using the highway, concurrently with the railway company. If a train is moving slowly, that care which its managers are bound to use, to avoid running people down, will be far more effective than if the train is going at a great speed.

It appears in evidence that if the train had been running at the ordinance rate, it could have been stopped within about ten feet; but, in point of fact, it was stopped "about a block" after passing the place of accident. All the evidence establishes that it was running at a higher rate of speed than the ordinance permitted.

To hold that defendant was bound only by the duty to use ordinary care to discover and avert injury to Mrs. Sullivan, however fast the speed of the train might be, is, in my opinion, to take the life out of the ordinance, and to put a premium on its violation.

Such a ruling practically gives defendant a great advantage from its own wrong and seems to me to be out of harmony with the reason and spirit of the law of negligence. Under that ruling, the greater the speed,

the less the capacity to use care to avoid danger to persons on the street, and hence the less the liability. To such a conclusion my dissent is respectfully but earnestly interposed.

In my judgment the duty to obey the ordinance was as imperative as that of using care to discover and avert peril to Mrs. Sullivan; the violation of either was negligence; and if the breach of the ordinance prevented the defendant from performing its further duty to use reasonable care to avoid injury to her, then, it should be held liable for that breach.

That proposition was distinctly laid down in *Maher v. Atlantic. etc., Co.* (1876), 64 Mo. 267. It was repeated with emphasis in *Dunkman v. Wabash, etc., Co.*, (1888), 95 Mo. 232, a case which has since been often cited as authority; and, upon a careful reading of the opinion and of the instructions in *Kelly v. Union Railway, etc. Co.* (1888), 95 Mo. 279, it will be seen that this precise question was involved in that case and was decided, without dissent, in the same way. Those decisions appear to me to be sound in principle and should not be overruled.

In *Prewitt v. Eddy* (1893), 115 Mo. 283; 21 S. W. Rep. 742, it was declared by the second division that "after a careful review of the doctrine of contributory negligence we find no warrant in authority or in reason for making any distinction in the character of defendant's negligence whether it is the violation of some statutory provision or municipal ordinance or is such by virtue of the common law." It is neither here nor there now whether that theory was correctly applied to the facts of that litigation. The principle, at least, was plainly laid down and it is applicable to the case here in hand.

Along with the fifth instruction the court (in plaintiff's first instruction) required the jury to find, as

essential to a verdict against defendant, "that said Ellen Sullivan was not, at the said time and place, guilty of negligence directly contributing to the injury." The same idea was repeated in the seventh instruction given for the defendant, as follows:

"7. The court instructs the jury, that if they shall believe from the evidence in the case, that the deceased was herself negligent, at the time and place she was killed, and that such negligence directly contributed to her death, then the plaintiff cannot recover, although you may believe that the defendant was also negligent."

It is the settled rule in Missouri that all the instructions should be considered together and read as an entirety. _Dougherty v. Railroad_ (1888), 97 Mo. 647; _Owens v. Railroad_ (1888), 95 Mo. 169. The fifth instruction authorizes a finding in plaintiff's favor on the facts stated, notwithstanding Mrs. Sullivan was negligent "in stepping upon the track;" but under the other instructions it was necessary to the verdict that the jury should further find that her negligence did not directly contribute to her death. Taking these statements together, the legal effect of the verdict is to decide that her negligence in "stepping on the track" was negligence that did not directly contribute to her injury, but was sufficiently remote to justify the submission of the issue, whether or not the defendant, by the exercise of ordinary care (including therein the observance of the duties imposed by ordinance) could have avoided injuring her.

Furthermore, it will be seen that the language, in respect of her negligence, is precisely the same in the first half of the fifth instruction as that used in the latter half; yet the former is held (in the principal opinion, delivered by Judge BRACE) to be a correct declaration, while the latter half is condemned as failing to properly state the law of contributory negligence.

In my opinion the fifth instruction, when read along with the others of the series, was right on principle and the judgment should not be reversed because of it.

2. But a careful examination of the plaintiff's fourth instruction, already quoted, leads me to consider it faulty. No doubt it correctly states a general rule in respect of Mrs. Sullivan's right, at the outset, to presume (if she knew no better), that the train was running at a speed not exceeding that allowed by law. But the statement of that rule is of doubtful utility and correctness as part of the instructions in a case of this sort, where the evidence is such as to warrant an inference and a finding either way on the question whether the injured party was guilty of negligence directly contributing to her own misfortune. This was held in *Myers v. Kansas City* (1892), 108 Mo. 480, and it seems to me that that opinion should not be abandoned.

But the instruction went further and proceeded to comment on the evidence on the point to which it referred. Mrs. Sullivan was certainly bound to use ordinary care. With the facts in proof when the cause was submitted, it was not proper to tell the jury that she had the right to *act* on the presumption that the train was not running at an unlawful rate of speed, when there was room for the inference that ordinary vigilance would have informed her that it was moving at a much greater speed.

It is true that, by the other instructions, already noted, the issue whether or not her negligence directly contributed to her death was submitted, and the jury found in plaintiff's favor on that issue. But it is impossible to reasonably say that that result may not have been influenced by the fiat of the court that she had the

right to "act on the presumption" that the train was going at a lawful rate of speed.

In the shape the case finally assumed upon the evidence, that instruction amounted to an announcement that her act in stepping on the track was rightful, as a matter of law, if she did not know the speed of the train, irrespective of the question whether or not the jury considered that act negligent on her part, and directly contributory to her death.

That declaration was, in our judgment, erroneous.

It was a question for the triers of fact whether she used ordinary care to observe the train and its speed, and whether, in going forward, she acted as a reasonably prudent person in the circumstances. To announce that she had the right to act on the presumption mentioned, was for the court to declare, in effect, as a rule of law, that her act was not negligence, and to exclude any inference of negligence based on that act.

Viewing the case broadly on its merits, it cannot fairly be said that this error was harmless. For that reason a new trial should be granted. GANTT, J. concurs in the second paragraph of this opinion.

MACFARLANE, J.—In concurring in the foregoing opinion of Judge BRACE, I do not wish to be understood as holding, nor do I think the opinion holds, any view contrary to what I conceive to be the settled doctrine in this state: *First.* That running an engine within an incorporated town or city at a rate of speed prohibited by a valid ordinance is of itself negligence, and if one is injured on a public crossing, by an engine being run in violation of such ordinance, the corporation is *prima facie* liable for all damage resulting therefrom.

*Second.* That a traveler has the right to assume, not being advised to the contrary, that a railroad company is obeying the law, and an attempt to cross a

track in a city in front of an approaching engine running in violation of such an ordinance, if, by the exercise of due care, such crossing could have been safely made, but for the excessive rate of speed, will not be such negligence as will bar a recovery, though the engine could not have been stopped or checked in time to have avoided the collision after the danger became apparent.

BURGESS, J.—I concur in the opinion of the court with the exception of what is said therein, in regard to instruction number 5, given on the part of plaintiff, and the instructions given on behalf of defendant, to the effect, that, although defendant was guilty of negligence *per se in running its train which caused the accident, at a rate of speed prohibited by city ordinance, yet, if after those in charge of the train exercised reasonable care and diligence to avoid the collision after they saw the perilous position of deceased, the defendant is not liable.*

But for the ordinance limiting the rate of speed in the city, the rule thus announced in the opinion would be the correct one, but that it is not with the ordinance in force, is, I contend, well settled law. The rule is well established in this state that moving a train in a city in excess of the rate of speed fixed by ordinance is negligence *per se. Schlereth v. Railroad,* 96 Mo. 509; *Flynn v. Railroad,* 78 Mo. 201; *Holmes v. Railroad,* 69 Mo. 536; *Elliott v. Railroad,* 67 Mo. 272; *Keim v. Railroad,* 90 Mo. 314; *Eswin v. Railroad,* 96 Mo. 290.

The case of *Hayes v. Railroad,* 111 U. S. 228, seems to be one of the leading cases in this country on the subject in hand, and in this case it is held that: "If a railroad company, which has been duly required by a municipal corporation to erect a fence upon the line of its road within the corporate limits, for the purpose of protecting against injury to persons, fails to do so, and

an individual is injured by the engine or cars of the company in consequence, he may maintain an action against the company and recover, if he establishes that the accident was reasonably connected with the want of precaution as a cause, and that he wat not guilty of contributory negligence." *Railroad v. Becker*, 84 Ill. 483.

So it was held in the case of *Railroad v. Stebbing*, 19 American & English Railroad Cases, 36, which was an action for personal injuries sustained by reason of the violation by defendant of an ordinance limiting the rate of speed at not exceeding ten miles per hour, that it must appear that the negligent breach of the duty imposed by the ordinance was the direct and proximate cause of the injury complained of, and that such injury would not have occurred but for the violation of that duty. See, also, *Railroad v. Hensil*, 70 Ind. 569; *Railroad v. Notzki*, 66 Ill. 455.

In the case of *Correll v. Railroad*, 38 Iowa, 120, the defendant requested the court to instruct the jury as follows:

"2. That the defendant's train was run within the city limits of the city of Vinton, at a rate of speed prohibited by the ordinance of said city, is not evidence of negligence in fact, *and of itself*, and involves no consequences except liability for the penalty to the city.

"3. It is not sufficient to charge the defendant to simply show that the train was run at a rate of speed greater than that prescribed by the ordinance. The plaintiff must show that after discovering the peril of the animals, the engineer could have so conducted as to have prevented the injury, and for this purpose the burden of proof is upon the plaintiff."

The court refused to give these instructions and gave the following:

"As to the alleged negligence in running the train, it is conceded that the accident occurred within the corporate limits of the city of Vinton, and that at the time of the accident an ordinance of the city prohibited trains from running at a greater rate of speed than six miles an hour within the city limits. If you find from the evidence that the defendant's servants or employees were running the train at a much greater rate of speed than six miles an hour, and that, while so running, the train ran against the horse and mule in question, this is evidence of negligence, and the defendant is liable, unless excused by reason of the alleged negligence of the plaintiff's servant. If the rate of speed was not to exceed six miles per hour, and the employees on the train, when the horses and mules came on the track, used all proper means to avoid the collision, the defendant is not liable."

There was judgment for plaintiff in the court below, and on appeal the judgment was affirmed, and the action of the trial court after a review of the authorities at considerable length, approved. See, also, *Railroad v. Dunn*, 78 Ill. 197.

In the case of *Railroad v. McDonnell*, 43 Md. 534, where the plaintiff was injured by the defendant's street car, which at the time was running at a greater rate of speed than was allowable by city ordinance, it was held, that the defendant was guilty of negligence, if the accident could have been avoided had the car not been running at a prohibited rate of speed. *Railroad v. McGowan*, 62 Miss. 682; *Haas v. Railroad*, 41 Wis. 49; Pierce on Railroads, 534; *Siemers v. Eisen*, 54 California, 418; *Johnson v. Railroad*, 31 Minn. 283; *Bott v. Pratt*, 33 Minn. 323; *Devlin v. Gallagher*, 6 Daly (N. Y.), 494.

The opinion of the court in this case is not in harmony with the case of *Brannock v. Elmore*, 114 Mo.

55, decided by division number one of this court, wherein it is held that it is actionable negligence to violate an ordinance which forbids blasting without first covering the rock with timber.

Plaintiff's fifth instruction is wrong for the reason that it commingles the moving of the train in violation of the ordinance, which is negligence *per se*, and which is alleged to have been one of the direct. causes of the injury, with the failure of defendant's servants in charge of the train to *check it up after they discovered the perilous position of the deceased,* by the exercise of ordinary care and diligence in time to have avoided the accident, but for the fact of the excessive rate of speed at which the train was running. This rule only applies to cases where the movement of trains is not in violation of some law or ordinance.

Suppose Mrs. Sullivan had been an infant child, so young as under the law to be incapable of contributory negligence, would it be contended that defendant under the facts in this case would not be liable? If so liable why not liable in the case in hand unless Mrs. Sullivan was guilty of negligence contributing directly to the accident? Whether she was or was not guilty of such negligence was properly and fairly submitted to the jury.

Or if A. in riding or driving along a street in a city at a rate of speed prohibited by ordinance, should without fault or negligence on the part of B. run over him and injure him, could A. claim immunity from liability for the injury, if it would not have occurred but for the fact that he was in violation of the ordinance, on the ground that he did everything that he could to avoid the accident after he discovered the perilous position of B.? No lawyer would hesitate to answer that he could not.

Notwithstanding the defendant was guilty of negligence *per se*, and that Mrs. Sullivan had the right to assume that the train was not being run at a rate of speed prohibited by the city ordinance, yet, if she knew that it was so running, and undertook to cross the track in front of it, when a reasonably prudent and cautious person similarly situated would not have done so, then she was guilty of such negligence as to bar her recovery. All persons are presumed to know the law, and citizens of cities and towns are presumed to be familiar with their city or town ordinances.

BLACK, J., in speaking for the court in the case of *Rine v. Railroad*, 88 Mo. 392, says: "There is no analogy between the case at bar, as respects the question under consideration, and those cases where the servants fail to observe some municipal or statutory regulation and the injury is attributed in whole or in part to that, or where they are not found at their proper places when passing a public crossing, or going through a populous city or district or fail to heed due warning of danger."

Mrs. Sullivan was not guilty of the violation of any law or ordinance in attempting to cross the railroad track, while the defendant was running its train at a rate of speed exceeding six miles per hour. If, then, defendant's servants in charge of the train were running it at an excessive rate of speed, and that was the direct cause of the injury; and if they had not been so running the injury would not have occured, then defendant is liable, unless deceased was guilty of contributory negligence.

Mr. Thompson, in his work on negligence, page 1232, section 5, says: "If a duty is enjoined upon A. by express statute, and B. is, without fault on his part, injured by reason of the fact that A. has failed to per-

form it, B. makes out a case for damages against A. by merely showing that A.'s neglect to comply with the statute was a proximate cause of the injury which he sustained." *Worster v. Proprietors of Canal Bridge*, 16 Pick. 541.

"The violation of any statutory or valid municipal regulation established for the purpose of protecting persons or property from injury, is of itself sufficient to prove such a breach of duty as will sustain a private action for negligence, if the other elements of actionable negligence concur. Thus, the violation of a statute or ordinance regulating the speed of vehicles, horses or trains * * * may be made the foundation of an action by any person belonging to the class intended to be protected by such a regulation, provided he is specially injured thereby." Shearman & Redfield on Negligence, sec. 13.

And although one who knows that a train of cars is moving at a greater rate of speed than is lawful, is not authorized to go upon the track or attempt to cross merely because he might do so with entire safety if the cars were moving at only a lawful speed; still he has a right to assume that the train is moving at a lawful rate until the contrary is made apparent.

It must be presumed that plaintiff knew the law, and knowing it she might properly assume that defendant's servants and employees were acting in conformity with its provisions. *Langhoff v. Railroad*, 19 Wis. 489; *Gratiot v. Railroad*, 116 Mo. 450. Plaintiff's fourth instruction was authorized by these adjudications, and the court committed no error in giving it. This position is not in conflict with the decision of this court in the case of *Lynch v. Railroad*, 112 Mo. 420, so much relied on by defendant in its motion for rehearing, as the failure to have bells on the mules in that case, had no more to do with the accident than the failure to ring the bell or

sound the whistle had in this; and for that reason the instruction given in that case was not warranted by the facts in the case and should not have been given. The same may be said in regard to the other authorities cited by defendant on this proposition.

"All the authorities agree that the plaintiff cannot recover upon mere proof of his injury and of the defendant's breach of a statute or ordinance of the kind mentioned in sec. 13. * * * The plaintiff must prove that the breach of regulations was the proximate cause of his damage. And therefore noncompliance with a statutory requirement, however stringent, affords no ground of action, if compliance therewith would not have prevented the injury." 1 Shearman & Redfield on Negligence, sec. 27.

Had the train been running at a rate of speed not prohibited by the city ordinance, there would have been no negligence on the part of those in charge thereof; and the company would not have been liable for the injury, unless after having discovered the deceased in her perilous position they failed to exercise proper care and diligence in order to have averted the calamity. And deceased was not guilty of such negligence as to bar a recovery in attempting to cross the track in front of the train under such circumstances.

Running the train at a rate of speed in excess of that fixed by ordinance of the city was a positive act of negligence. If, then, the rate of speed of the train was negligence per se and was the cause of the accident, why inject into the instruction a condition or qualifying clause which abrogates or ignores the legal force and effect of the ordinance? The ordinance was intended for the protection of life and property and those who cause injury by violating its provisions cannot claim immunity therefrom by showing, however rapidly the train may have been running, that after the danger was

discovered, it did all it could to check the train and to avoid the injury. To so hold would be offering reward for violations of the ordinance, as the greater the speed the less the liability.

If this be not the law, ordinances of cities regulating the speed of trains are of no consequence. In the country or localities that are sparsely inhabited, the speed of railroad trains is not limited, and in such case the company is not liable for injuries unless they fail to exercise ordinary care and diligence to prevent them after those in charge of the train become aware of the danger.

In the case of *Zimmerman v. Railroad*, 71 Mo. 491, there was no question as to the violation of a city ordinance in the movement of defendant's train, but the case was bottomed upon failure to ring the bell or sound the whistle. So was the case of *Moody v. Railroad*, 68 Mo. 470. Nor was there in the cases of *Purl v. Railroad*, 72 Mo. 168; *Turner v. Railroad*, 74 Mo. 602; *Boyd v. Railroad*, 105 Mo. 371. The principle announced in these cases we think correct, but they are not authority on the question now under consideration, for the reason that the failure to comply with the statutory provisions in this regard has nothing to do with the movement of trains.

In the case of *Bowman v. Railroad*, 85 Mo. 533, the following instruction was approved by this court: "The court instructs the jury that if they believe from the evidence that there was an ordinance in force in the city of Louisiana, prohibiting railroads from running their engines and trains of cars at a greater rate of speed than six miles per hour in the city limits, and that defendant by the agents and employees did, on the ——— day of June, 1882, negligently run its engine and cars on the hog of plaintiff by running said engine and cars at a greater rate of speed than six miles per hour,

and that by reason of said running said hog was killed, then defendant is liable, and the verdict should be for plaintiff." The court in speaking of this instruction says: "The first instruction given on the part of plaintiff is in accord with the doctrine laid down in *Karle v. K. C., St. J. & C. B. R'y Co.*, 55 Mo. 476; and in *Kelley v. H. & St. J. R'y Co.*, 75 Mo. 138, where it is held that where a municipality having the power passes an ordinance fixing the rate of speed beyond which locomotives shall not run within the corporate limits, a violation of such ordinance is negligence *per se*; and when the evidence shows further that an injury occurs, which is caused by the prohibited rate of speed, then the railroad company is liable. But, unless it is shown that the injury was caused by the speed exceeding that prohibited by the ordinance there is no liability. The first instruction squarely presented these questions, and was not objectionable."

In the case of *Kelley v. H. & St. J. Railroad, supra,* HENRY, J., in delivering the opinion of this court, says: "Defendant complains of the first instruction the court gave for plaintiff, which declared 'that it was negligence for defendant to run its locomotive engine in the city of Kansas, at a rate of speed exceeding six miles per hour.' Abstractly this was correct. There was an ordinance of the city, which it was authorized to pass, prohibiting a greater rate of speed, but, unless there was evidence to connect with the accident the violation of the ordinance as a cause, it was no ground for recovery."

In the case of *Bergman v. Railroad*, 88 Mo. 678, it was held by this court that notwithstanding the negligence of plaintiff, the company was liable for the death caused by backing its train, if it could have avoided the accident by having observed the provisions of an ordinance of the city in which the accident

occured.   See, also, *Kelly v. Union Railway & Transit Co.*, 95 Mo. 279.   When defendant was running its train at an unlawful rate of speed it was not in the exer-cise of ordinary care.

The case should be reversed and remanded to be tried on the theory of negligence *per se* on the part of defendant, if contributing directly to the injury, and whether or not there was contributory negligence on the part of the deceased.